Davis, J.,
delivered the opinion of the court:
Forty-six bales of cotton belonging to James Tait were seized by the military authorities in Mobile, in May, 1865, and the pro *235 ceeds passed into the Treasury. Tait then assigned the cotton or its proceeds to one Browning, as security for an indebtedness. Browning commenced suit in his own name to recover the proceeds. In July, 1865, the pleadings were amended by making Tait plaintiff for Browning’s use, and in this form judgment was rendered for the claimant. A new trial was then granted on the ground of newly discovered evidence. (5 C. Cls. R., 638.) Tait then became bankrupt. His assignee in bankruptcy sold this claim by auction to Peter Burke, whose attorney now moves for leave to appear and prosecute it to final judgment in Burke’s name. The general hearing of the case on facts and law took place simultaneously with the hearing on the motion to substitute Burke as claimant.
In Gillis’s Case (95 U. S. R., 407) the court held that the Act of February 26, 1853 (10 Stat. L., 170), “strikes down and denies any effect to powers of attorney, orders, transfers, and assignments which before were good in equity, and which a debtor was bound to regard when brought to his notice.” The justices who dissented from some of the conclusions of the majority agreed with them that that statute “prohibits the assignment of claims against the Dnited States.” Therefore Browning’s equities, if he has any, cannot be enforced through this tribunal.
Tait having parted with his'interest to the assignee in bankruptcy, and the assignee having transferred his interest to Burke, we are next to consider whether Burke can be substituted as claimant in this suit.
Tait’s interest in the proceeds undoubtedly passed to the assignee by the assignment, and this suit was then pending. The assignee could either have applied within the statutory time to prosecute the suit in his own name (14 Stat. L., 524), or he could sell and assign the claim (lb., 530). He elected the latter course. It does not appear that the sale was made by order of court; but this does not affect the validity of the transfer.
It is argued that the assignment by the assignee to Burke is void for the reason which voided the attempted transfer to Browning. The conclusive reply to this is that the statute explicitly authorizes an assignee in bankruptcy to sell a claim like this, and consequently must authorize a purchaser to buy it and to acquire title to it.
It is further argued that although Tait’s rights may have passed to Burke through the assignee in bankruptcy, they must *236 be enforced in tbe name of that assignee, since at tbe common law an assignee of a chose in action can enforce bis rights at law only in tbe name of tbe assignor.
Tbe answer to tbis is twofold: 1st. That tbis case does not come within tbe common-law rule. 2d. That under the provisions of tbe Captured and abandoned property Act, Burke is tbe only person wbo can maintain tbis action
1st. At tbe common law tbe assignee of a chose in action can prosecute bis rights in bis own name when tbe debtor assents to tbe assignment and promises to pay tbe debt to tbe assignee. We have already noticed tbe clear assent of tbe defendants to tbe sale to Burke. His title rests entirely upon tbe provisions of a statute enacted by their agents. Equally clearly they promise to pay tbe proceeds to him only, if to anybody. Tbe Captured and abandoned property Act is construed as promising to pay such proceeds to tbe person entitled to receive them (Haycraft’s (Jase, 22 Wall., 81), and among tbe necessary requisites of title is tbe right resulting from ownership at tbe time of final judgment. (Cutner’s Case, 17 Wall., 517; Villalonga’s Case, 23 Wall., 35.) Consequently tbe statutory promise is made to bin, if to any one, and tbe case is taken, out of tbe operation of tbe common-law rule.
2d. Tbe course of argument on tbe first point has anticipated a part of what may be said on tbe second. In order to entitle a claimant to recover under tbe provisions of tbe Captured and abandoned property Act, be must have been tbe owner at tbe time of tbe capture (Carroll’s Case, 13 Wall., 151); must have tbe right to tbe proceeds at tbe time of tbe filing of tbe petition (15., and a like right at tbe time of'final judgment (Gutner’s and Vilalonga’s Gases, supra.) As to tbe first and second, be may enjoy transmitted rights in a representative capacity ; as assignee in bankruptcy, for instance. Tbe purchaser from an assignee in bankruptcy receives, with tbe transfer of tbe debt, all tbe representative rights of tbe assignee, and thus tbe first and second requisites are found in him only. Tbe same is equally true of tbe third. Browning, for instance, is not entitled to tbe proceeds in tbis case ; Tait’s interest in them went to tbe as-signee in bankruptcy ; tbe assignee’s mterest descended to Burke for a valuable 'consideration; and whatever right of ownership exists is now vested in tbe latter. ' If it be true that these statutory requisites must exist in tbe person of a claimant, tbe con *237 verse of tlie- proposition is equally true, that the person who possesses them is entitled to appear as claimant.
It is argued that this court sits as a court of equity in proceedings under the Captured and abandoned property Act, and that we must resort to equity to determine the status of this claimant.
The judges who concur in this opinion prefer to rest their action upon the principles already stated. They are quite sufficient to justify our disposition of this' case, without invoking the interposition of equity.
The general act reorganizing this court and the Captured and abandoned property Act were passed by Congress on the same day, and are parts of one piece of legislation.
An early attempt of this court to render judgment under the general act for specific performance (Alire’s Case, 1 C. Cls. R., 233) was met by the Supreme Court by the remark that “ it is quite clear that the limited power to render a judgment confines the subject-matter to cases in which the petitioner sets up a moneyed demand as due from the Government.” (Alire’s Case, 6 Wall., 573.)
Shortly afterward, the same court held that this court “was authorized to enforce legal rights and obligations, but it could not proceed further and judge of the equities between a citizen and his government. * * * The Government has not thought' fit to allow itself to be sued in the Court of Claims on equitable considerations.” (Bonner's Case, 9 Wall., 156.)
About the same time, a question being raised concerning proceedings in cotton cases, the same court said “no special proceedings are prescribed to the Court of Claims” by the Captured and abandoned property Act, but “they are to proceed in the usual way to hear and adjudicate upon the question of ownership and right to the proceeds according to the proofs and law of the case.” (Zellner’s Case, 9 Wall., 244.)
Nearly simultaneously with these proceedings, however, the Supreme Court, in casual expressions in two cases, referred to the United States as a trustee holding the proceeds of captured and abandoned property for the owner’s benefit (Anderson’s Case, 9 Wall., 56; Padelford’s Case, 9 Wall., 531); which expressions were repeated in two subsequent cases: Klein’s Case, (13 Wall., 128); Intermingled Cotton Cases (92 U. S. R., 651). From these casual expressions it is argued that we are possessed of the *238 equity jurisdiction necessary to administer upon trusts, and that tbe Supreme Court was mistaken when it said that utlie Government has not thought fit to allow itself to be sued in the Court of Claims on equitable considerations.”
That court, in calling the United States a trustee, may have referred to the large class of trusts cognizable at law. In its broad legal sense the word trust embraces many transactions and relations of business and property which are administered in courts of common law in States where two systems of jurisprudence and of remedies exist side .by side. The familiar cases of bailments and of money had and received to the use of another are instances of such trusts.
The court may well have compared the relations of the Government toward the fund in the Treasury to this class of trusts. It is less probable that it intended to convert those relations into an equitable trust, since the essential elements of personal confidence and trust reposed in the depositary by the creator of the trust are wholly wanting.. The language of Chief Justice Waite in Haycraft’s Case, where he “ expresses all there is of the trust” (22 Wall., 94), warrants this conclusion.
In administering upon the cotton cases this court has neither assumed to act as a court of equity nor as a court of common law, but simply as the Court of Claims. Dicta of individual judges may afford ground for arguing in favor of equity jurisdiction in case of necessity, but no necessity for its exercise has yet arisen. We therefore hold ourselves free to decide that question in accordance with our views of law when it may arise. Our proceedings thus far under the Captured and abandoned property Act are to be defended upon general principles common to all systems of jurisprudence recognized by our courts and derivable from the statutes conferring jurisdiction upon us, without the necessity of a special resort to equity in order to justify them.
This court is created by Federal law, with its seat in the Federal capital, with forms of proceeding prescribed by Federal law, for the recovery of money from the Federal Treasury. The forms prescribed for it are neither taken from the common law nor from equity. They leave a large measure of freedom from the restraints of special rules of pleading (Burns’s Case, 12 Wall., 246); while at the same .time we are required to observe in all proceedings against the Government the general rules of evidence and the general canons for the construction of contracts *239 and tbe judgment of transactions wbicb prevail at tbe common law. (Moore’s Case, 91 U. S. R., 270.)
In some cotton cases it appeared that cotton of several claimants bad become so intermingled tbat it was impossible to know wben and where or for bow mucb eacb claimant’s cotton was sold, while it was clear tbat tbe Treasury bad received tbe proceeds of tbe whole mass. In such case, instead of hearing eacb suit separately, and then determining from tbe result of tbe whole evidence tbe aggregate number of bales and tbe number contributed by eacb party, tbe court, ‘for its own convenience, beard tbe cases together, and then rendered separate judgments in favor of individual claimants. Tbe Supreme Court, on appeal, justified tbe course of this court, calbng attention to tbe fact tbat tbe proceedings were bad under tbe limited jurisdiction conferred by tbe statute. In all this there was nothing analogous to a suit in equity, and nothing requiring equity jurisdiction in tbe court for its performance.
In another class of cases it appeared tbat rival claimants were seeking tbe same fund in tbe Treasury. There tbe court joined tbe suits at tbe bearing, and permitted claimants to contest eacb other’s title. We regard this as an inherent right in tbe court. If, however, a justifying analogy must-be sought in tbe proceedings of other tribunals, instead of looking for it in equity, we shall rather find it in tbe common law, which permitted a bailee, sued in detinue by different persons,, each claiming ownership of tbe deposit, to plead tbe facts, without changing bis position as defendant, and to pray tbat tbe several owners might inter-plead with eacb other. (Viner’s Abridgment, Title Untrepledeur; Reeve's Hist. Com. Law, ch. 23.)
Certainly tbe Government has not .appeared before this court in any recorded proceeding in any way resembling a bill of in-terpleader in equity. It has not asked as plaintiff to have several contesting defendants interplead ; -it has not sought to bring into court a contesting claimant not on tbe record. The records show tbat in these consobdated suits there has been no privity of estate between tbe several claimants and tbe Government; and privity of estate, or title, or contract is essential to tbe maintenance of a bill of interpleader.
Still less have our proceedings in these suits been analogous . to proceedings under a bill in tbe nature of a bill of interpleader. ■On a state of facts bke tbe present, tbe United States, under tbe *240 rules of equity pleading, would appear as plaintiff, and the bill would allege that the plaintiff is interested in the property which is the subject of the suit, and that it seeks the relief demanded in order to have its interest protected by the court. It is needless to say that no such suit has been brought in this court by the Government.
If it be necessary or desirable to argue a speculative theory of jurisdiction out of the acts of the court in administering the statute, it will be found that we have approached nearer to common law than to equity, and that many of our proceedings have been contrary to the usages of an equity court. Since Haycraft's Case (22 Wall., 81), this court has invariably regarded the right of the claimant in a cotton case to recover as based upon an express promise; and in Sevier's Case (7 C. Cls. R., 387), it was held by the whole court that it is no part of our duty to inquire whether the fund in the Treasury is or is not exhausted, so long as the proper claimant to whom the promise was made is unpaid. That this decision was right is too clear for argument. The language of the third section of the act is explicit, that every claimant who establishes his right to judgment according to the provisions of that act is entitled to it, irrespective of the amount in the Treasury. It is for the political department of the Government to determine whether he shall have a further remedy, in case nothing is in the Treasury to respond to a judgment.
As this court has not by any judicial act assumed authority to judge of “ the equities between a citizen and the Government,” or to entertain a suit against the Government “ on equitable considerations,” and as such assumption is not necessary to the decision which we make in the present case, we think it advisable, for Inany reasons, not to express an opinion that we have equity jurisdiction in advance of attempting to exercise it.
Besting our decision entirely on the reasons first stated in this opinion, the motion to amend the pleadings and to substitute Burke as claimant is allowed; the form of the amendment to be settled at chambers.
After the proper amendments are made and entered, the court will, on motion of the claimant’s attorney, in open court, order judgment to be entered in Burke’s favor for the recovery of eight thousand and fifty dollars, with provisions for the protection of Tait’s attorney of record, if any shall then appear to be necessary and proper.