OPINION.
Richardson, J.,
delivered the opinion of the court:
Several questions of law arise upon the findings of fact in this case.
1. In the year 1871, the Board of Public Works, by a general resolution, passed September 29 of that year, fixed the price of grading of old graveled streets to the depth of 2 feet below the surface at 40 cents per cubic yard, ánd other grading at 20 cents a cubic yard, as set forth in finding II. Subsequently, on the 16th of June, 1873, the claimant made with the defendants the contract set forth in Finding I, by which he agreed to do the grading therein specified, and for which he was to be paid at the rate of 30 cents per cubic yard. No mention was *226 made of any different kinds of grading, and a uniform price of 30 cents a cubic yard was fixed for all that was agreed to be done.
Tbe claimant insists that, as part of the grading done by him was that of an old graveled street, he is entitled to be paid for it at 40 cents a cubic yard, the rate specified in the Board’s resolution of 1871, establishing what are commonly called ‘‘Board rates.” We cannot accede to his demand. That resolution of the Board of Public Works upon which he relies was passed nearly two years before his contract was made, and although it would continue to apply, until abrogated, to all future work for which the rate of compensation was not otherwise fixed by agreement of the parties, it certainly could not control a subsequent written contract expressly establishing different rates of compensation. '
We hardly think the claimant himself would be willing to submit to the full application of the doctrine, which he presses upon us only as to part of his work, that the Board rates fixed-by resolution of 1871 should govern the compensation for this work under his subsequent contract, since the rate for grading, therein established, except of graveled streets, was 20 cents a cubic yard, or 10 cents a yard less than his contract rate. The claimant did more than three times as much ordinary grading as he did of graveled street grading, and would therefore lose largely by the adoption and application of his rule of compensation to all the grading of the two different kinds which was done by him. The principle is an untenable one, audit makes no difference whether it would work to the advantage or disadvantage of either of the parties. The claimant was entitled to 30 cents a cubic yard, the contract price, for all his work of grading.
2. The contract between the parties of June 16, 1873, set forth in finding I, provided that the claimant should be paid for hauling excavated sand or gravel 1 cent per cubic yard for every 200 feet beyond the first 200 feet. Subsequently, on the 15th of July, 1873, the Board of Public Works entered of record on their minutes that the auditor and contract clerk werq notified that the price for hauling earth had been established at l-£ cents per cubic yard for every hundred feet of haul over the first 200 feet since June 1, 1873, as appears by an extract from the records set forth in’finding II.
*227 We can conceive, of some cases to wbicb that orcier, if it can be called an order, might rightfully be made to apply, as where a contract had been made and the price had not been agreed upon, or where there had been a change in the terms of contract, or the defendants had not performed their part of it, and so the contractor had been released from his obligations, or there was a renewal or extension of a contract after it had expired by its own limitation, or had been abandoned by agreement, if the parties understood that the work was to be continued under the Board rates, or there were other legal considerations for an agreement on the part of the Board of Public Works to raise the prices. But there were no such considerations in the present case. On the contrary, this order was entered of record in about a month, after the contract was entered into, and no change of circumstances are shown to exist why the claimant’s compensation should be governed by it.
The Board of Public Works, if they so intended, had no right thus gratuitously to raise the rate of compensation agreed upon and to give away the public money without a legal consideration. Public officers, who are but agents, have not such control -> over public contracts and public money that they can authorize payments to be made beyond the strict liability to which their principals are legally subjected. It has been so decided in many adjudicated case.s. (Bond et al. v. Newark, 19 N. J., 376; State et al. v. Hoboken, 36 N. J. Law R., 378; Schman v. Seymour, 24 N. J. Equity R., 143; Hodges v. Buffalo, 2 Denio, 110.)
The very act by which the Board of Public Works was created contained tlie following provision aimed at practices such as the claimant now invokes in his behalf:
Sec. 16. The legislative assembly shall never grant or authorize extra compensation, fee, or allowance to any public officer, agent, servant, or contractor, after such service has been rendered or a contract made, nor authorize, the payment of any claim or part thereof hereafter created against the District under any contract or agreement made without express authority of law; and all such unauthorized agreements or contracts shall be null and void. (Act of February 21, 1871, ch.132, § 15, 16 Stat. L, 423.)
We hold that the claimant is not entitled to the benefit of the Board’s order of July 15, 1873, to raise the rates of compensation agreed upon by the parties in their contract of August 16,1873, although the order in terms relates back to June 1, 1873.
*228 3. After the claimant had commenced work on the alley in square 140, under his contract set out in finding' I, a temporary injunction by the supreme court of the District of Columbia was served on him and on the engineer and the Commissioners of the District as shown in finding Y, and his work was suspended on that account for little more than a month. For this suspension he claims damages from the District. We have not undertaken to estimate the damages to which he was thereby subjected, if there were any, because we are not aware of any principle of law by which a contractor can recover of the other party to his contract damages caused by a third party’s having wrongfully obtained a temporary injunction against both of them, as defendants in the same proceedings, from going on with the work agreed upon between them. If he is entitled to damages from anybody, he must recover them from the one who instituted the proceedings, and not from a co-defendant who, like himself, suffered by the interruption and delay of the work.
4. As to the counter-claim for the recovery of an overpayment made by the Board of Public Works.
The contract of August 12, 1872, set out in finding IX, provided that the claimant should be paid for grading at the rate of 30 cents per cubic yard. In settling with him the Board allowed 40 cents a yard for 4,901 cubic yards. This was the rate prescribed by the Board, September 29, 1871, and, as we have already shown in relation to the other contract, could not be applied to work done under a contract subsequently made, in which a different price was fixed and agreed upon. But in addition to that objection, it appears by finding X that this work was not grading old graveled street, and so did not come within the 40-cent • rate provided for in the Board’s order, even if it could have been applied to such work had it been done. This overpayment was clearly made in mistake of fact, and may be recovered back.
5. As to the counter-claim for the recovery of overpayments made through the Board of Audit.
It is shown by findings III and XI that the claimant was paid for 3,333 cubic yards of excavation at 30 cents per yard which he never did, amounting to . $999 90
*229 That he was paid for hauiing the same. $766 49
That he was paid “Board rates” under the resolution of September 29, 1871, as set out in findings III and XI, for work done' under his contract in excess of contract rate.:... 348 50
That he was paid “Board rates” under the order of July 15,1873, for work done under his contract as set out in findings III and XI in excess of contract rate . 1,700 72
3,815 61
We have had occasion in several cases heretofore to review the power and functions of the Board of Audit and have considered, as did the Supreme Court in the case of The District of Columbia v. Cluss (103 U. S. R., 706), that the Board “was not a judicial body whose action was final; it exercised little more than the functions of an accountant. A claim allowed by it was not necessarily a valid one; a claim disallowed was not, therefore, illegal. Its action either way left the matter open to contestation in the courts.” ,
We have uniformly held that money erroneously paid through the action of the Board of Audit might be recovered back upon a plea of counter-claim, and we adhere to our previous rulings. (Neitzey’s Case, 17 C. Cls. R., 127; Adams's Case, ibid., 364; Brown’s Case, ibid., 420.)
The result of the whole case is that the defendants have sustained their counter claim to the amount of:.J. $4,305 71
And the claimant has proved retainers of his money on accounts to the amount of. 425 13
$3,980 58
The judgment of the court is that the defendant recover of the claimant the balance of difference between their respective claims, amounting to $3,980.58, and judgment will be entered accordingly.