Drake, Ch. J.,
delivered the opinion of the court:
Michael Shiner, the claimant’s intestate, had two contracts in writing, entered into in September, 1871, with the Board of Public Works of the District of Columbia, for the grading of Eleventh street east, between Pennsylvania avenue and H street; one numbered 109 and the other 110.
The price stipulated in the contracts to be paid for the grading was 20 cénts per cubic yard.
Under those contracts Shiner, prior to the 29th of August, 1872, graded 19,591 cubic yards; which was but a small portion of the whole grading required by the contracts. Of the quantity graded, 6,833 yards were done before January 8,1872, and the other 12,758 yards between that day and August 29, 1872.
For the former quantity the claimant asks only 20 cents per cubic yard; for the latter 30 cents per yard. The grounds upon which he rests the latter claim are as follows :
January 22,1872, the Board of Public Works adopted the following order:
“ Ordered, That the prices of grading be fixed at 30 cents per cubic yard, including the hauling, not to exceed 200 feet; for each additional 200 feet one cent additional per cubic yard will be allowed.”
September 6,1872, the Board ordered that contracts 109 and 110 should be canceled, and a new one prepared, dated after *325 the establishment of present rates, that is, 30 cents per cubic yard, for such work, and allowing Shiner that rate for the same.
In pursuance of this order, there was drawn up a contract-r-No. 2l6¿ — dated January 25,1872, stipulating for the payment to Shiner of 30 cents per cubic yard for grading, which should include the first 200 feet of hauling, and one cent per cubic yard for every additional 200 feet of hauling.
This paper was signed by Shiner, but not by any member or officer of the Board of Public Worlcs; and on the 22d of October, 1872, it was by that Board ordered to be canceled, and the work to be given to another contractor, Shiner having failed to go on with the work on Eleventh street, though he was notified by the Board, on the 21st of September, that unless he immediately proceeded with the execution of contract 216 J, the same would be taken from him and given to another.
In connection with this statement we would say, in advance, that we use the words “canceled” and “cancellation” not in the strict legal acceptation of those terms, but because they are used in the proceedings of the Board. As will presently appear, the fifth article of each contract provided that the Board of Public Works, in certain contingencies, might discontinue all of the worlc under it,; and beyond doubt this was what was meant and understood by both parties by the words “canceled” and 0 cancellation.” Therefore, for convenience sake, we continue to use those words, but in the sense in which the parties regarded them.
So far as the first two contracts are concerned, the claimant, by not suing on them, or either of them, and by suing on the third alone, and claiming the rate of compensation stipulated for in it, waives all objection .to their being taken from him, or “ canceled.”
Now, upon these facts, what is the claimant’s case as presented in his petition? The petition sets out contract 216¿- as the basis of the action, and alleges that the grading of the 19,591 cubic yards was done under that contract, and ought to be paid for at 30 cents per cubic yard and hauling, instead of 20 cents per yard and no hauling.
We are not able to discover any foundation for such a claim. Every fact in the case is against it.
*326 1. The grading of 19,'591 cubic yards was all done before contracts 109 and 110 were canceled, and at a time when there was not the least ground for claiming it to have been done under any other contract.
2. The order of January 22, 1872, increasing the rates for grading was not retrospective in its operation; did not refer to contracts previously entered into on other rates; did not mention Shiner or his contracts; and if it had specifically named him and directed him to be paid the higher rates, would not have legally bound the defendant to pay those rates. This was so held by this court in Roche v. The District of Columbia, (18 C. Cls. R. 217), which was just such a case as this.
3. The paper set out in the petition as “ a contract in writing duly made and entered into,” by the Board of Public Works and Shiner, never was so made and entered into. As before stated, it was signed by him, but not by any member or officer of the Board. In section 37 of the act of February 21,1871, “ to provide a Government for the District of Columbia” (16 Stat. L., 119, 127), it was provided that—
“All contracts made by the said Board of Public Works shall be in writing, and shall be signed by the parties making the same, and a copy thereof shall be filed in the office of the secretary of the District.”
In the face of this absolute requirement we are at a loss to comprehend how it could be averred that the paper set forth in the petition was “ a contract in writing duly made and entered into ” by the Board of Public Works.
The only answer to this, attempted by the claimant’s counsel, was, that “it cannot be disputed that contract 216£ contains the intention of said Board and its agreements with the claimant, as disclosed by the official correspondence given in the record.” It needs but a word to show the fallacy of such a position. The Board’s “intention” as to any contract could be lawfully indicated only by what the members of the Board signed. There might be circumstances in which the “official correspondence” of the Board could be resorted to to discover or interpret the intention of its acts; but it is impossible, in view of that statutory provision, to charge the Board as a contracting party by any such resort.
In no view can the paper numbered 216J be held to be a contract, or to form a basis for any recovery by the claimant in this action.
*327 There remains another matter to be disposed of, — the set-off which the defendant claims, based on the increased expense to which the District was subjected by having the grading of Eleventh street completed by others, over and above what it would have had to pay Shiner if he had completed it at 20 cents per cubic yard. It is found that that increased expense was $6,428.10. Was Shiner liable under contracts 109 and 110 to repay than amount to the Board of Public Works'?
In each of these contracts was an article in the following words:
u Fifth. It is further agreed that if, at any time, the party of the first- part shall be of opinion that the said work, or any part thereof, is unnecessarily delayed, or that the said contractor is wilfully violating any of the conditions or covenants of this contract, or is executing the same in bad faith, all of the work may be discontinued under this contract, or any part thereof; and the said party of the first part shall thereupon have the power to place such and so many persons as may be deemed advisable, by contract or otherwise, to work at and complete the work herein described or any part thereof, and to use such materials as may be found upon the line of said work, or to procure other materials for the completion of the same, and to charge the expense of said labor and materials to the said party of the second part, and the expense so charged shall be deducted and paid by the said party of the first part out of such moneys as may be then due, or may at any time thereafter grow due, to the said party of the second part, under and by virtue of this agreement or any part thereof; and in case such expenséis less than the sum which would have been payable under this contract if the same had been completed, the said party of the second part shall be entitled to receive the difference; and in case such expense shall exceed the last said sum the amount of such excess shall be paid to the said party of the first part by the said party of the second part.”
It is upon this article that the defendant rests its right to that sum of $6,428.10. True, the defendant’s counsel admits that inasmuch as Shiner is dead, and no assets have come into the hands of his administrator, judgment for that sum cannot be rendered against the claimant; yet, as it does not necessarily follow that no assets will ever come into his hands, we deem it proper to dispose, so far as this opinion can do so, of the matter of this set off. A.s we look at the subject there is no reason why it should continue to have even a supposable existence.
September 6, 1872, the Board of Public Works ordered con *328 tracts 109 and 110 to be canceled, and on that day the secretary of the Board gave the auditor of the Board and Shiner written notice of that fact. To hold that to have been a cancellation of the contract under the power in said fifth article, it should appear that the Board was of opinion that one or more of three states of fact existed, namely: 1. That the work which Shiner had by those contracts undertaken to do was “unnecessarily delayed”; or 2. That Shiner was “willfully violating” some ■condition or covenant of those contracts; or 3. That he was •“ executing the same in bad faith.” It does not appear that the Board was of the opinion that either of those states of fact existed; nor does it appear that the order of cancellation was claimed by the Board to have been made under the authority of that article. Such being the state of the case, it becomes a matter of import to ascertain the occasion, meaning, and purpose of the order of cancellation, and we think we see it all very plainly.
As appears in the findings, the auditor of the Board referred the measurement of Shiner’s 19,591 yards of grading to the Board, to know whether the price to be' paid for it should be 30 instead of 20 cents per cubic yard, under the Board’s order of January 22,1872, fixing the price of grading at the former sum.
September i, 1872, the Board referred the matter to its chief engineer, with directions to report wh'en the work was done, and what price should be paid for it; and the same day the assistant engineer made the following return in writing:
“ Respectfully returned to Board. This work has been done since the price of grading was increased from 20 to 30 cents. Mr. Shiner has done the work well, and given this office but little trouble, and I see no reason why he should not be paid as much as other persons doing work at the same time, viz: 30 cts. per cub. yd., plus the additional haul.”
With this official return before it, the Board, on the 6th of September, 1872, made the order cancelliug contracts 109 and 110, and ordering a new one to be prepared, dated after the day on which was made the order of the Board increasing the rate'from 20 to 30 cents, and allowing for hauling beyond 200 feet.
Upon these facts it is in our view incontestable, that the *329 order of supposed cancellation was not made under the fifth article of contracts 109 and 110; was not made because of default on Shiner’s part in the performance of those contracts ; was not made as a reprisal upon him; but was made with the specific purpose of giving him a higher price for the work he had already done under those contracts, as well as for that he was expected to do under the new contract that was ordered to be prepared; which new contract, as we have seen, was never signed by the Board; and therefore never became a legal contract between him and the Board.
Now, after all this, can the defendant go back to contracts 109 and 110, andbase upon them the set-off claimed in this case? We think not.
If the order of September 6th was not made for any of the causes set forth in the fifth article of those contracts, but for other cause and upon other grounds, then the District cannot hold him to the consequences there agreed to result from a cancellation based on one or more of those causes.
The point is, whether that order did, in fact, take away those two contracts from him. If it did, then as there was along with it no reservation of a right in the District to hold him for any increased expense of the grading, the right so to hold him may well be considered abrogated with all the other parts of the contracts. If the order did not, in fact, take away the two contracts, then the Board had no right to let the work to another party; and unless that right existed, the District cannot charge ¡áhiner with the increased cost of the work paid to that party.
Regarded in any light, we are of opinion that the set-off urged by the defendant could not under any circumstances be sustained.
How, then, stands the claimant’s case? There is undoubtedly due him from the defendant an unpaid balance of $453.60; but, if the practice in this court were governed by common law rules, we could not give him judgment for it, because he has sued ■ upon a paper which he treats as a contract between his intestate and the Board of Public Works, but which was no contract at all; and not having declared on the contracts under which the work was actually done, he would certainly be non-suited by any court governed by common law rulés of practice.
*330 But does it necessarily follow that the dead contractor’s representative shall be turned out of this court, and that, too, when the time has gone by within which another suit for that unpaid balance could be brought here, or in any other court in the land? We will not do this if any way can be found to avoid it without illegality.
The Supreme Court of the United States announced that “the Court of Claims, in deciding upon the rights of claimants, is not bound by any special rules of pleading” (U. S. v. Burns, 12 Wallace, 246); and this court has been steadily ruled by the spirit of that comprehensive and liberal expression. In Burke's Case (13 C. Cls. R., 231), we said: “This court is created by Federal law, with its seat in the Federal capital, with forms of proceeding prescribed by Federal law for the recovery of money from the Federal Treasury. The forms prescribed for it are neither taken from the common law nor from equity. They leave a-large measure of freedom from the restraints of the special rules of pleading.” Again, in Morse Arms Manufacturing Company's Case (16 C. Cls. R., 296), we said: “Proceedings are conducted here with aviewto effecting substantial justice, irrespective of technical forms.” And again, in Brown v. The District of Columbia (17 C. Cls. R., 303), we said: “The court . . . . seeks to administer justice between the contending parties by forms the most simple and convenient, and to make all such interlocutory orders as will lead to the doing complete justice to all concerned, without prolonging litigation or subjecting either side of a controversy to unnecessary inconvenience and expense.”
Nevertheless, there must needs be a limit to the liberality indicated by these utterances, and we find it in the opinion of the Supreme Court in Baird's Case (8 C. Cls. R., 13), in the following sentences:
“This court has never been strict in applying the rules of pleading to this class of cases, and has looked to the substantial justice and law of the case, rather than to the manner in which the questions to be considered are presented. But the allegations and proofs must so far correspond as that the latter shall not wholly depart from the case made in the petition, and introduce demands which the government had no notice to meet. The rule of correspondence to this extent is vital to the substance of the proceedings, and it is necessary to give to *331 the United States the benefit of the principle of res judicata in cases where they ought to have the protection which it affords.”
Applying here the rule thus expressed, we would say, that if, at the trial, the defendant’s counsel had objected that the claimant could not, under .the petition, recover the balance of $453.60, because the contract sued- on was no contract at all, and that the balance, if due, had accrued under the other two contracts, we would, if the claimant had asked it, have allowed him to amend his petition, by setting out the two contracts as-the foundation of his suit. This would have done no wrong to the defendant; for, if surprise had been alleged, we would have granted a continuance. Nor would it have introduced out of time a new cause of action, and so raised the question of jurisdiction. The real claim is for the doing of the worlc; and. no detriment would have come to the defendant from its being alleged to have been done under contracts 109 and 110 instead of 216£. Indeed, that was the very thing that the defendant requested us to find as a fact, and we have so found it. If, however, the claimant had refused to amend, we should have felt obliged to deny him judgment for the balance, because it was not due him under the contract he sued on.
We are willing now to deal with the case very much in that way. We do not care to require the claimant to file an amended petition, claiming this balance under contracts 109 and 110; but if he will place on file a stipulation admitting that it was earned and is due under those contracts, then judgment will be entered in his favor for $453.60. If he declines to do this, his petition will have to be dismissed.
Nott, J., was not present at the trial of this case, and took no part in the decision thereof.
The claimant filed a stipulation in conformity with the suggestion in the opinion, and judgment was entered in his favor for the sum named.