BarNey, Judge,
delivered the opinion of the court.
The question for decision in this case arises upon the demurrer of the defendants to the amended petition of the plaintiff. This suit was before this court once before upon a demurrer to the original petition, which was the same in substance as the amended petition, except that it was therein alleged that the question of demurrage involved had been presented to the Interstate Commerce Commission and a ruling against its allowance made; also said original petition did not set up rule 8, hereinafter quoted, as one of the rules applicable to the handling of freight on the plaintiff’s railway. Said demurrer was sustained by this court * and the petition amended in both of the above particulars as will hereinafter appear.
Briefly stated, said amended petition alleges as follows. That plaintiff is a railroad corporation lawfully doing business in the State of Utah and maintains a station on its line in said State for the delivery of freight in carload lots, *163 known as Thistle Junction. During the year 1907 the defendants through the Eeclamation Service undertook certain work known as the Strawberry Valley project in the vicinity of said Thistle Junction, and for the more convenient handling of freight intended for use in that work the plaintiff maintained and operated a switch or siding known as Diamond Switch at milepost 679 on its railway, about 1.5 miles west of said Thistle Junction, at which point the defendants, through said Eeclamation Service, provided an unloading plant and warehouse for the handling of cement consigned to said Eeclamation Service in carload lots. During the months of July and August, 1907, the plaintiff received and transported a large number of cars loaded with cement shipped from Independence, Kans., and consigned to said Eeclamation Service at said “milepost 679, near Thistle Junction,” and was ready and willing to deliver said cars on said Diamond Switch there located from time to time when there was room thereon, but the defendants, through the Eeclamation Service, directed the delivery of said cars on said switch at times and in number to suit its convenience in unloading the same, in consequence of which direction and in order to comply therewith the plaintiff was compelled to hold said cars at said Thistle Junction station, the nearest available point, and thereafter from clay to day to switch them on said Diamond Switch as directed by said Eeclamation Service.
Then follows a statement of the length of time said cars were detained at Thistle Junction in excess of 48 hours in consequence of said direction; and that the demurrage therefor had been demanded of said Eeclamation Service and refused and that the rights of the plaintiff to such demurrage had been presented to the Interstate Commerce Commission which had decided that the same was properly assessed, notwithstanding which decision the Eeclamation Service still refused to pay the same; and this suit is brought to recover the amount of said demurrage.
The plaintiff in its petition sets out certain rules and regulations in force in 1907 governing the handling of freight in carload lots on the plaintiff’s railway system in the State *164 of Utah and which had been filed with the Interstate Commerce Commission. Such rules quoted are as follows:
“ Rule 2.
“ Forty-eight (48) hours’ free time will be allowed for the loading or unloading of all cars subject to car service. It being further understood that no car will be allowed more than one period of free time for loading and one period of free time for unloading under one transportation charge. * * * In calculating free time Sundays and legal holidays are excepted. * * *
“Rule 4.
“At the expiration of the free time a charge of one dollar ($1.00) per car per day or fraction thereof must be collected for detention to all cars held for loading or unloading or subject to order of consignors, consignees, or their agents.
“Rule 5.
“ SectioN 1. Cars containing freight to be delivered on carload delivery tracks or private sidings shall be placed on the tracks designated immediately upon arrival, or as soon thereafter as the ordinary routine of yard work will permit. Delivery will not be made on specially designated yard or cracks, except when it is practicable to do so. When such delivery can not be made, on account of such tracks being fully occupied, or for any other reasons beyond the control of the carrier, delivery shall be made at the nearest available point.
“ Section 2. Delivery of cars shall be considered to have been effected at the time when such cars have been placed on the proper private or public delivery tracks, or if such track or tracks already contain such number of cars belonging to the same consignee as prevent prompt delivery, then such cars will be considered as having been placed when the road offering the cars would have delivered them had the condition of such tracks permitted.
“Rule 8.
“ CARS DETAINED EOR VARIOUS CAUSES.
“ Section 1. Cars detained at any point within the territory of this association by reason of being billed to order and awaiting bills of lading or instructions, as to disposition, and cars detained for want of proper shipping instructions, or *165 for any cause for which shipper or consignee and not the railroad company is responsible, shall be subject to charges under these rules.”
The first contention of the defendants is that the claim set forth in the amended petition is barred by the statute of limitations upon the theory that it is not now based upon rule 8 above quoted alone, which, as before stated, was not set out in the original petition, and for that reason is a new suit upon a claim which occurred more than six years before the filing of the amended petition. We do not think there is any merit in this contention. The gist of this suit is for demurrage and has been so from its beginning, and though perhaps defectively set out in its original petition — which is doubtful — there was never any doubt as to what was the cause of action in the suit.
As to whether the amended petition states the cause of action against the defendants presents a more difficult question. If it were not for the liberal rule of pleading in practice in this court we might hesitate in answering the above question in the affirmative. Under the rules as to demur-rage as laid down in the cases relied on by the plaintiff the averments in the petition in this case are rather meager and a somewhat unjustifiable economy was exercised, but it has been repeatedly decided by the Supreme Court and this court that the strict rules of pleading are not applicable here, and all that is necessary in setting out a claim is to so state it that the court is advised as to what it is. United States v. Barnes, 197 U. S., 146, 154; United States v. Behan, 110 U. S., 338-347; United States v. Burns, 12 Wall., 246; Little v. United States, 19 C. Cls., 323, 330; Wood v. United States, 49 C. Cls., 119, 124. We think under these authorities we are justified in holding that the amended petition states a claim for demurrage arising from the fact that the cars of the plaintiff were detained at Thistle Junction in consequence of the action of the Beclamation Service.
We next come to the question whether the rales of the Utah Service Association as quoted justify the alleged charge for demurrage. Buie 8 provides that:
“ Cars detained at any point within the territory of this association by reason of being billed to order and awaiting *166 bills of lading or instructions, as to disposition, and cars detained for want of proper shipping instructions, or for any cause for which shipper or consignee and not the railroad company is responsible, shall be subject to charges under these rules.”
The plaintiff evidently must rely upon the last clause of this rule, that the detention of its cars arose from a cause for which the shipper or consignee and not the railroad company was responsible. The amended petition avers that this detention arose from the direction given by said Reclamation Service to only deliver cars on this side switch at times and in such number as to suit its convenience in unloading, in consequence of which direction, and to comply therewith, it was compelled to hold the cars at Thistle Junction, the nearest available station, and thereafter from day to day set them on the Diamond Switch as directed by the Reclamation Service. The defendants contend that this direction of the Reclamation Service was no justification for the railway company in holding the cars loaded with cement at Thistle Junction, but that it should at least have filled the siding at said switch with the cars loaded with cement for the Reclamation Service, whether the Reclamation Service wished it to do so or not. We can not agree with this contention. It may have been, and quite likely was, more economical to the Reclamation Service to pay the demurrage than to be glutted with these cars, and in any event it is clearly estopped from making any such defense. If the Reclamation Service asked this as a favor, it can not now be heard to take any advantage because this favor was granted.
The cases hereinafter referred to also are applicable to this matter. Rule 4 as well as rule 8 of the Utah Car Service Rules would also seem to apply to just such a case as this, as it is averred these cars were held at Thistle Junction by direction of the consignee.
In the case of Chicago & N. W. R. Co. v. Menasha Paper Co., 159 Wis., 508, and affirmed by the Supreme Court, 241 U. S., 55, the facts were almost identical with the facts as averred in this case, and both courts held that demurrage should be collected. The cases are so nearly alike that it is hardly necessary to review the one cited. There, as in this *167 case, the cars were detained at a near-by siding at the request and for the accommodation of the consignee and were set out on its private switch as asked for. There, as in this case, the consignee’s side track was capable of containing more cars than were actually placed upon. The rules bearing upon this subject were substantially alike in both cases. In that case Mr. Justice McKenna, in delivering the opinion of the court, said, pp.- 62 and 63:
“ It is somewhat difficult to state succinctly the argument of counsel by which he attempted to give pertinency to the contention based on these rules. We have seen that the sidetrack of the paper company could accommodate about seven cars, but as the company used the track it could handle only two or three cars a day, and hence it did not ask for more. The supreme court of the. State, therefore, decided that the railway company had complied with its obligation to the paper company by complying with such demand and was entitled to charge for demurrage. And answering the con- ' tention of the paper company (repeated here), the court said the railway ‘ was not obliged to do a vain and useless thing by putting seven cars upon the track at one time, and thus prevent the practical handling or unloading of any cars thereon by appellant [paper company] contrary to its orders.’ The court, by such holding, counsel says, decided that ‘ the rules must have a reasonable construction.’ And, further, ‘ This is the crus of the decision and it is absolutely in opposition to all of the decisions of the Interstate Commerce Commission and of the courts and of the spirit and intent of the act to regulate commerce.’ In other words, counsel insists that there should have been an actual filling of the tracks even though this would have prevented their use and have been contrary to the directions of the company, the basis of the contention being ‘ that the rules must be strictly construed and that there must be “definite tariff authority ” for the charges made.’ _ And the conclusion, it is asserted, is supported by all authorities, judicial, administrative, aná legislative. Rigorously applying the test that the exact letter of the statute must be observed, counsel goes so far as to assert that there was an imperative duty upon the railway company to so fill the tracks, and this without orders. And contesting the proposition, decided by the supreme court of the State, that cars arriving at Menasha or Snell’s siding had reached their destination, counsel says: ‘ It was the duty of the railroad to keep the sidetrack filled to its physical capacity before it could hold the cars “at *168 the nearest available point.” To hold otherwise would leave it dependent upon the judgment oí the officers of the railroad as to how much unloading the consignee could do, and would therefore result in discrimination and special privileges prohibited by the act to regulate commerce.’ And further: ‘ The carrier was derelict in its duty when it failed to fill the sidetrack .to its capacity as it had not completed its duty as a common carrier until it had placed the cars on the sidetrack of the plaintiff in error.’
“ We are unable to concur in counsel’s construction of the rules or to hold that it has any such formidable support as he assigns to it. And we content ourselves with the bare assertion, not even pausing to review counsel’s chief reliance, that is, United States v. Denver & Rio Grande R. R., 18 I. C. C., 7. The case had not the breadth given to it. If it had, we should be unable to follow it.”
We think that the above cited case is decisive of the case under consideration. See also Berwind-White Good Mining Co. v. Chicago & Erie R. Co., 235 U. S., 371.
It follows from the foregoing that the demurrer should be and the same is hereby overruled.
Hay, Judge; Downey, Judge; Booth, Judge, and Campbell, GMef Justice, concur.

 50 C. Cls., 382.