Richabdson, Cb. J.,
delivered tbe opinion of tbe court:
Tbe claimant was collector of internal revenue, and as sucb a bonded disbursing’ officer {Aet March 1, 1879, ch. 125, § 2, amending Rev. Stat., § 3144, 1 Supp. Rev. Stat,, 424) from July 1, 1881, to June 30,1885.
He appointed one Mecklenburg, August 1, 1882, one of bis deputies, at a salary of $1,500 a year, as provided by tbe same act (1 Supp. Rev. Stat., 425), and reported tbe fact to the Commissioner of Internal Revenue, and continued his name on bis annual report of tbe “organization of tbe district” during tbe *452 time covered by the claim now in suit to March 11, 1885, as required by the regulations.
Bach year during said time the Secretary of the Treasury made an allowance for the payment of the salaries of the claimant’s deputies, including said Mecklenburg, as provided by the act of 1879, chapter 125, section 2, amending section 12 of the act of 1875 (1 Supp. Rev. Stat., 425). Every month in advance dui'ing that time the claimant as disbursing officer drew from the Treasury', on warrants signed byr the Secretary' and countersigned by the First Comptroller, as provided by law (Rev. Stat., § 269), one-twelfth of the allowance, and paid each of his deputies.the salary fixed and allowed for, taking their vouchers therefor.
Every quarter, from the time of the appointment of said Mecklenburg, the claimant rendered* his account of payments with the vouchers, as required by law and regulations, and the same were regularly audited, settled, passed, and allowed by the accounting officers, including the monthly payments to said Mecklenburg, without objection, until the accounts rendered for the quarter ending December 31, 1884, and March 30, 1885, were reached by the Comptroller.
Then, for the first time, the Comptroller decided that said Mecklenburg, holding the office of inspector of tobacco, could not lawfully receive from the public Treasury any compensation for bis services as deputy collector, and that the payment to him by the collector was not authorized by law and could not be allowed to him, and the same was disallowed and the collector was chaiged therewith, and his account settled accordingly'.
. This action is brought to recover the amount so paid to said Mecklenburg.
The defense set up is that the payment is prohibited by Revised Statutes, sections 1763, 1764, 1765, and the Act June20, 1874, chapter 328, section 3 (1 Supp. Rev. Stat., 47).
The sections of the Revised Statutes are as follows:
“ Sec. 1763. No person who holds an office, the salary7 or annual compensation attached to which amounts to the sum of two thousand five hundred dollars, shall receive compensation for discharging the duties of any other office.
“Sec. 1764. No allowance or compensation shall be made to any officer or clerk, by reason of the discharge of duties which belong to any other officer or clerk in the same or any other *453 Department; and no allowance or compensation shall be made for any extra services whatever, which any officer or clerk may be required to perform, unless expressly authorized by law.
“Sec. 1765. No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in anV form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation.”
That those sections do not apply to such a case as the’ one now under consideration is authoritatively settled by the Supreme Court in Converse’s Case (21 How., 463), where Chief-Justice Taney elaborately reviews all the different acts which have since been brought together and re-enacted in those sections, and has pointed out their true interpretation as to allowances and compensation beyond salaries, as follows :
“The legislature contemplates duties imposed by superior authority upon the officer as a part of his duty, and which the superior authority had, in the emergency, a right to impose, aud the officer was bound'to obey, although they were extra and additional to what had previously been required. But they can by no fair interpretation be held to embrace an employment which has no affinity or connection, either in its character or by law or usage, with the line of his official duty, and where the service to be performed is of a different character and for a different place, and the amount of compensation regulated by law.”
The principles laid down in that case were reaffirmed by the Supreme Court in Brindle’s Case (110 U. S. R., 688), and have recently been carefully and thoroughly considered and reviewed by this court at the present term in an opinion delivered by Judge Scofield in Saunders Case (21 C. Cls. R., — ); see also United States v. Evans (4 Mackey, 281).
The defense interposed by those sections being removed, the next question is whether such payment is prohibited by the act of 1874 (1 Supp. Rev. Stat., 47), which is as follows:
“ Seo. 3. That no civil officer of the Government shall hereafter receive any compensation or perquisites, directly or indirectly, from the Treasury or property of the United States beyond his salary or compensation allowed by law: Provided, That this shall not be construed to prevent the employment and payment by the Department of Justice of district attor *454 neys, as now allowed by law, for tbe performance of services not covered by their salaries or fees.”
Mecklenburg, to whom the claimant paid this money for his services as deputy collector, was an inspector of tobacco and cigars, appointed by the Secretary of the Treasury under lie-vised Statutes, section 3151, and was, therefore, unquestionably a civil officer. (Const., art. 2, § 2.) But as such he received no salary or compensation from the public Treasury. If he performed any service he was to be paid the established fees by the parties who had occasion to employ him.
Like notaries public in this District, appointed by the President, many of whom also hold or have held at the same time salaried offices in the Departments, and are otherwise employed in the public service, their fees are established by law, and are paid by the parties for whom the services are performed. And so with justices of the peace. (Rev. Stat. Dist. Col., § § 990, 1234.)
In our opinion the act of 1874 does not apply to officers of that class, but is confined to civil officers who receive salai'ies or compensation from the public Treasury. That such was the intention of Congress may be inferred from che course of legislation and all the acts on the subject taken together.
As deputy collector Mecklenburg was not an officer, but merely an employé of the collector (United States v. Germaine, 99 U. S. R., 508), though paid by the defendants.
There is in our opinion another reason why, under the peculiar circumstances of this case, the collector is relieved from the operation of the act of 1874 and the sections of the Revised Statutes relied upon by the defense, whatever their true interpretation may be:
Before the passage of the act of 1879, above referred to, under which Mecklenburg was appointed, deputy collectors were paid by the collectors, and there was no privity of contract between, them and tbe United States. But that act and the practice of the Treasury Department under it so changed their relation to the Government that their salaries became payable out of the public Treasury upon the allowance of the Secretary, as therein provided. That is the understanding of the Department and has been so held by this court. (Herndon’s Case, 15 C. Cls. R., 446, 452; Ryan’s Case, 17 id.,,47.)
The claimant, as collector, appointed Mecklenburg to be one *455 of his deputies. There was no fraud about it and no concealment. The fact was reported to the Commissioner, his name was borne on the return of the organization of the district, the salary of $1,500 especially for him was included in the annual allowance made by the Secretary on the recommendation of the Commissioner, and the monthly vouchers signed by him were returned to the accounting officers. The fact that he was an inspector of tobacco and cigars was equally well known to the Department, for he was appointed such by the Secretary of the Treasury, and his name as bofli deputy collector and inspector was borne on the Official .Register. (Rev. Stat., § § 510,511.)
The collector, as a disbursing officer, received from the Department money with which to pay Mecklenburg’s salary monthly for two years, his accounts for the same were audited and allowed quarterly by the accounting officers upon the monthly vouchers of the deputy during that"time and until after the last payment, when the Comptroller changed his construction of the statutes and held that Mecklenburg was prohibited from receiving the money because he was an inspector of tobacco and cigars. No money was paid to him after that decision was promulgated.
The collector was acting, as a disbursing officer, the mere conduit or bearer of the money allowed to Mecklenburg by the Secretary of the Treasury. For him the allowance by the Secretary and the previous rulings of the Comptroller were a sufficient justification for the payment. (Jones v. The United States, 18 How., 92.)
It was said by Mr. Justice McLean, giving the unanimous opinion of the Supreme Court in United States v. MacDaniel (7 Peters, 14): “Usages have been established in every Department of the Government, which have become a kind of common law, and regulate the rights and duties of those who act within their respective limits. And no change of such usages can have a retrospective effect, but must be limited to the future. Usage cannot alter the law, but it is evidence of the construction given to it, and must be considered binding on past transactions.” * * * “It would be a novel principle to refuse payment to the subordinates of a Department because their chief, under whose direction they .have faithfully served the public, had mistaken his own powers, and had given an erroneous construction oí'the law.”
*456 If the money were unlawfully received and unlawfully retained by Mecklenburg, it might be recovered back from him, but it should not be recovered from the innocent bearer of it to him under the authority of the highest officers of the Treasury Department.
This may be said to be in the nature of estoppel, and that estoppel cannot be set up against the Government. We must not be misled by phrases and maxims. General principles are subject to limitations and general rules to exceptions. There are cases cited in Bigelow on Estoppels (2d ed., 240) wherein a government has been held bound by estoppel notwithstanding the general rule.
A judgment on demurrer is held to be “conclusive (by way of estoppel) of the facts confessed by the demurrer” (Gould’s Pleadings, ch. 9, part 1, § § 43, 44), and so all judgments of courts of competent jurisdiction are said to be conclusive as estoppels. This doctrine applies alike to the Government as to individuals. (O'Grady’s Case, 22 Wall., 641, and 10 C. Cls. R., 134; Meigs’s Case, 20 C. Cls. R., 181.)
If there be any case in which estoppel can be applied to the Government it certainly ought to be applied in a case- like the one- now at bar. Disbursing officers are subject to great responsibilities and risks necessarily incident to their duties. They are always responsible for the identity of the parties to whom they are authorized to pay money and for the genuineness- of signatures to the vouchers returned by them, and for many other critical acts; but when they pay money by authority or under the directions of their higher superior officers who are charged with the duty of interpreting the law of the c ase and of giving instruction and orders, they should not be held chargeable for the mistakes and errors of such officers. It is sufficient that they be charged for their own mistakes.
The judgment of the court is that the claimaut recover the sum of $844.45.
Weldon, J., was prevented by illness from sitting in this case and took no part in the decision.