Scofield, J.,
delivered the opinion of the court:
The defendants move to dismiss this case, because, as they allege, the right of action accrued more than six,years before the petition was filed.
For the purpose of this argument the motion admits the allegations of the petition to be true.
*29 The original claim is for carrying the mail during the months of April and May in 1861. The petition was filed November 15,1886, more than twenty-five years after the service was rendered.
The claimant, however, alleges that notwithstanding the right of action under the original claim may have been lost by lapse of time, a new right of action has been acquired, or the old one revived, by the proceedings in the Post-Office and Treasury Departments in 1881.
The petition makes the following allegations:
(1) The claimant carried the United States mail during April and May, 1861, for which service they were to be paid $7,700.
(2) August 16, 1861, a balance of $7,700 was found by the Sixth Auditor for carrying the mail as aforesaid, and the same was so certified to the Postmaster-General.
(3) Thereupon the Postmaster-General drew a large number of drafts in favor of William Goodman, the president of the company, upon postmasters along the line of the route, amounting in all to $6,844.37, and one of $855.63 upon the assistant treasurer in New York. •
(4) On the same day the President issued his non-intercourse proclamation, whereby it became unlawful to present for payment the drafts drawn upon postmasters until after the close of the war.
(5) In 1866 seventeen of the drafts on postmasters, amounting to $4,636.01 were returned to the Sixth Auditor unpaid.
(6) In 1881 the Sixth Auditor stated the account, crediting the claimant with the drafts returned, showing a balance of $4,636.01, which balance he certified to the Secretary of the Treasury. January 14, 1882, the same was reported by the Secretary of the Treasury to the Speaker of the House of Eep-resentatives, for an appropriation for the payment thereof. The same proceeding again took place in 1883.
(7) In 1885 the Sixth Auditor “ certified this balance and carried the matter before the Postmaster-General in order that he might issue his warrant on the Treasury in payment thereof,® which he declined to do. The same proceeding again took place in 1886.
It-is very plain that whatever right of action, the claimant might have been entitled to in this court, based upon the original service, or upon the unpaid drafts returned, or under the *30 Act March 3, 1877 (19 Stat. L., 362), had passed under the bar of the statute long before the petition was filed.
Thus the suit turns upon the effect to be given to the rulings of the Sixth Auditor in 1881 and succeeding years.
It has been the uniform practice of this court to require claimants to prove their cases, independent of the decisions of the accounting officers. Many suits have been brought where the claims were rejected by these officers and judgments obtained upon proper evidence here. In those cases the contention of the claimants was just the reverse of the contention in the case at bar. These cases are too numerous and too well known to practitioners here to require citation. It is proper, however, to refer to the case of McKnight (13 O. Cls. It., 292), in which the whole system of departmental accounting, in an elaborate opinion by Judge Richardson (now chief-justice), is very fully examined and explained. Some of the conclusions arrived at in that case are stated in the head-notes as follows:
“ Certificates and orders made previous to the issue of drafts for the payment of claims by the Treasury are mere departmental proceedings, from which parties acquire no new rights.
“ Accounts and balances stated and certified by the accounting officers are neither conclusive nor prima facie evidence of the indebtedness of the Government, nor can an action be brought upon them.” .
In the same case, page 309, the court says:
“ It never could have been intended by Congress that in such cases the United States were to assume the burden of proof to establish the errors of their accounting officers, instead of requiring claimants to prove their whole case.”
The case on appeal was affirmed by the Supreme Court. (98 IJ. S. R., 179.)
This doctrine was re-affirmed by this court in Buffalo Bayou R. R. (16 C. Cls. R., 238), where the court, referring to the opinion in the McKnight Case, says: “By that opinion it is clearly, we think, incontestably shown that the different processes by which demands against the Government are adjusted are matters of accounting ex parte, and, indeed, confidential, until the claimant receives a draft upon the Treasurer.”
The claimant contends that however correct these rulings may be when applied to other accounting officers, they are not appropriate to proceedings before the Sixth Auditor, because *31 tliey say “ the Sixth Auditor is the appointed arbitrator to decide upon all accounts of the Post-Office Department, subject only to the right of appeal to the First Comptroller,” and that his “ certificate that a balance is due is final and conclusive upon the Postinaster-G-eneral and all others, unless appealed to the First Comptroller.”
In support of this position they cite the following Revised Statutes:
“ Sec. 27T. Seventh. The Sixth Auditor shall receive all accounts arising in the Post-Office Department or relative thereto, with the vouchers necessary to a correct adjustment thereof, and shall audit -and settle the same and certify the balances to the Postmaster-General.
“ Sec. 270. Whenever the Postmaster-General or any person whose accounts have been settled by the Sixth Auditor is dissatisfied with the settlement made by the Auditor, he may, within twelve months, appeal to the First Comptroller, whose decision shall be conclusive.
“Sec. 390. It shall be the duty of the Postmaster-General:
* # # * # * #
“ Sixth. To control according to law and subject to the settlement of the "Sixth Auditor all expenses incident to the service of the Department.
“Eighth. To direct the manner in which balances shall be paid over; issue warrants to cover money into the Treasury, and to pay out the same.
“ Sec. 4055. All payments on account of the postal service shall be made to persons to whom the same shall be certified to be due by the Sixth Auditor.”
We see nothing in these citations to support the claimant’s theory, except that in the provisions for an appeal to the First Comptroller are the words, “ whose decision shall be conclusive.” Upon that point in the case of McKnight before cited this court said:
“ This conelusiveness is probably intended to be no more than that of other decisions of the Comptroller, that is, conclusive upon the executive branch of the Governmentbut not upon Congress or the courts. (Rev. Stats., § 191.) ”
The decision of the Supreme Court in Chorpenning v. The United States (94 U. S. R., 397) is in the same line of argument. Congress had authorized the Postmaster-General to “examine and adjust’’certain claims of Chorpenuing, in which there was “reserved and allowed to said claimant the right of appeal from the proceedings of the Postmaster-General to the *32 Court of Claims.” Under this authority the Postmaster-General did “ examine and adjust” said claims, and found and stated a large balance due the claimant. The claimant did not appeal, but brought his suit in the Court of Claims to recover the amount thus found due to him. Upon the trial it was urged that the proceeding before the Postmaster-General was in the nature of arbitration and the award conclusive. The court held otherwise and dismissed the petition. The claimant appealed.
In affirming the decisiou of the Court of Claims, the Supreme Court said :
u The duty devolved upon the Postmaster-General was wholly ministerial and in no sense judicial, or that of an arbitrator. The record discloses no element of an arbitrament. The adjustment having been made under a special law, renders it in nowise different as regards the point we are considering from those made daily by the accounting officers of the Government under the general law conferring their powers and prescribing their duties. The idea that the Government is finally concluded by the results at which they may arrive would be regarded as a novelty within and without the several Departments.”
Thecourt holds that the proceedings before the Sixth Auditor in 1881 and the following years do not constitute an award conclusive upon the Government, nor a finding upon which the claimant can recover in this court without otherwise proving the claim, and do not, therefore, take the case out of the limitation prescribed in section 1069 of the Revised Statutes.
The petition will be dismissed.