ÍTott, J.,
delivered the opinion of the court.
The railroads of the United States considered as mail carriers fall into these classes:
The first are those which have not been aided by the Government in any way, and as to them it is settled by decisions too numerous to be cited that their service is voluntary; that is to say, that they are under no obligation to the Government to carry the mail and may decline the service if they will, but that if they do perform, it must be upon the terms and conditions prescribed by the statutes and regulations of the Post-office Department or under an express contract within the limitations imposed by law.
The railroads of the second class are popularly known as illand-grant roads;” that is to say, roads which have been aided by grants of public lands upon a condition which, in substantially the same terms, applies to all of them, “ That the United States mail shall be transported over said roads, under the direction of the Post-office Department, at such price as Congress may, by law, direct: Provided, That until such price is fixed by law, the Postmaster-General shall have the power to determine the same.” As to these roads it is likewise well settled that their service is obligatory; that is to say, they are not at liberty to decline to carry the mails if dissatisfied with the terms prescribed by Congress or the Postmaster-General; and, conversely, their involuntary service is not a waiver of any legal right, nor an acquiescence in the terms imposed by the Postmaster-General if in excess of their legal obligations.
*42 The railroads of the third class are roads generally known as belonging to the Pacific Railway system, roads which have been aided by grants of public land and the guaranty of bonds. The conditions upon which these roads were aided are that they shall carry the mails at fair and reasonable rates; that their earnings for service to the Government shall be applied upon the bonds, and that the bonds shall “ constitute a first mortgage on the whole line of the railroad,” u in consideration of which said bonds may be issued.” As to them, it has been settled since the decision of the Supreme Court in the Union Pacific R. R. Case (104 U. S. R., 662) that all mail service is rendered under and subject only to the original act, and is not subject to the restrictions prescribed by later statutes for other roads.
The railroad in the present case is a continuous line made up in part of land grant and in part of unaided road. It runs from Chattanooga, in Tennessee, to Meridian, in Mississippi. For the portions of it which lie in Georgia and Tennessee no grant was made. For the portions which lie in Alabama and Mississippi the road was aided.
Since the decision in the case of The United States v. The Kansas Pacific Railway (99 U. S. R., 455), it can not be doubted that the obligation of a road of the Pacific system extends no further than that portion of its line for which it has received aid; and the leading question in the present case is whether that principle is not equally applicable to land-grant roads.
In the Kansas Pacific case the statute says that the bonds shall “ constitute a first mortgage on the whole line of the railroad” “in consideration of which said bonds may be issued.” In this case the statute says that the grant shall be “ to aid in the construction of the following roads in said State” (Alabama or Mississippi), and that “ the mail shall be transported over said roads ” “ at such price as Congress may by law direct.” In the one case the first mortgage created by the-statute was limited to the road “ in consideration of which” “ the bonds were issued; ” in the other the grant was declared to be to aid in the construction of roads “ in said State,” Alabama or Mississippi. In the former case it was held that Congress could not have intended to impose a lien upon a portion of the road which had not constituted a part of the consideration for which the subsidy was given; in this it is equally clear *43 that a grant of land to the State of Alabama or Mississippi, to aid in the construction of roads within that State, can not be construed to extend the conditions of the grant to an unaided portion of a road constructed in another State. In both cases there is in fact one ownership and one line of road ; but so far as these relations with the' Government are involved there are two owners and two distinct roads. That the two owners are one and the same person, and that the two roads form one transit line, can not affect the question of legal right and liability.
If the case stopped at this point, there could be, in the opinion of the court, but one answer to the question whether the unaided portions of the claimants line are subject to the limitations set upon land-grant roads. In the absence of any other statute it would have to be held that as to the land-grant portions the rate of compensation is that which Congress or the Postmaster-General may have fixed, and as to the other that theclaimantwas free toenterinto an express contract, orif none existed, to recover in quantum meruit for the service rendered'. But as to these latter portions of the road it was unquestionably within the power of Congress to set a limitation upon the price which should be paid for such service, and thereby to leave the public ageDt, the Postmaster-General, without authority to-bind the defendants for any greater price, either by entering into an express contract or by accepting the claimant’s services without one; and it was equally within the discretion of Congress to fix different rates for different roads or classes of roads, and in so doing to say that if part of a mail carrier’s line was a land-grant road the remainder ot the line should be restricted to the same compensation. . Such a restriction would not bind the carrier to carry the mail, but it would bind the Postmaster-General not to incur a greater liability, and would be notice to-the road at what point his authority to bind the Government by contract terminated.
The questions, therefore, in this case are whether Congress have set a limit to the responsibility of the Government for service rendered by the unaided portions of the claimant’s road, and whether that limit is defined by the first or the thirteenth section of the Act 12th July, 1876 (19 Stat. L., p. 78).
The first provision of the act is general, and applies in terms to “ railroad routes” and to “ all railroad companies:”
*44 “That the Postmaster-General be, and he is hereby, authorized and directed to re-adjust the compensation to be paid ■from and alter the first day of July, 1870, for transportation of mails on railroad routes by reducing the compensation lo all railroad companies for the transportation of mails 10 per cent, per annum from the rates fixed ami allowed by the first section of an act entitled ‘An act making appropriations for the service of the Post-Office Department for the fiscal year ending June 30, 1874, and for other purposes,’ approved March 3,1873, for the transportation of mails on the basis of the average weight,” §1.
The second is specific (§ 13), and is in these words:
“ That railroad companies whose railroad was constructed in whole or in part by a land grant made by Congress on the ■condition that the mails should be transported over their road at such price as Congress should by law direct, shall receive •only eighty per centum of the compensation authorized by this -act.” (§ 13.)
The obscurity of the act, as in all cases of obscurity, whether ■of statutes or of contracts, arises from the omission of a few words. If to the section had been added “ upon both portions of the road, whether aided or unaided,” we should know what the legislative power intended; and conversely if the section had said “ upon so much of a road as was aided by a land grant,” there would have been no controversy between the parties.
On the one hand the literal import of the language inclines to a conclusion adverse to the claimant; on the other, the intent •of the statute as a whole being to establish one compensation for railway mail carriers in general and a reduction for the land-grant roads specifically, it does not seem probable that Congress intended to mingle the two together arbitrarily and extend the reduction to a portion of a railroad where no legal or equitable ground for reduction existed. In the consolidation and extension of our railroad systems it easily may be that a company with a thousand miles of track has absorbed a land-grant road of fifty miles, and it can hardly be supposed that Congress intended to reduce the compensation on 950 miles of track to 80 per cent,, while alongside of it a rival road of a thousand miles is to receive 100 per cent.
In this uncertainty there is an aid that a court may invoke, which is the construction that has been given by the Executive *45 Department charged with the interpretation and administration of the statute. The Postmaster-General in office when this act was passed construed the thirteenth section as the Supreme Court has construed “ the whole line of the railroad ” in-the Kansas Pacific Railroad case (supra); that is to say, he held' that where a road had been aided “in whole or in part” the reduction of compensation was to be in whole or in part. A second Postmaster-General came into office, and then a third and a fourth, a fifth and a sixth, and still it remained the settled construction that where the land grant had been in whole or in part, the reduction should be in whole or in part. The accounting officers of the Treasury also entertained the same opinion and audited payments on the unaided portions of these roads at the rates prescribed by the first section of the act.. For nine years both parties rested content with this interpretation of the law, Congress bypassing no act to correct the erroneous construction, if it was erroneous, the railroad companies by voluntarily carrying the mails over the unaided portions of their roads.
In 1885, however, a seventh Postmaster-General gave the reverse construction to the statute, and, moreover, held that the practice of his predecessors was illegal, and that the payments which they had made for past services should be re-opened, and the excess be deducted from the future earnings of the roads. Accordingly, in this case the Post-Office Department charged the claimants with money which had been allowed and paid to them by the Department under previous Postmasters-General, and the charge rested entirely upon a new construction given by the same Department to the same existing law.
Such changes in the construction of a working statute under which men are rendering service and earning compensation through every day of the year are greatly to be deplored, whether the change be for the better or for the worse; and they are especially to be deplored where the new construction will become or can be made retroactive. Every man is bound to know the law and the true interpretation thereof, but where the responsible officers of the Government give a construction to a statute, upon the faith of which a contractor renders a service and receives his pay, can the Government subsequently say that the payment was illegal, and open the transaction, and recover back the money ¶ In the case of disbursing officers *46 it lias been held that where payments were made in pursuance of the rulings of accounting officers, the Government, as between tbe disbursing officer and itself, is estopped from setting np that the payments were illegal (Hartson's Case, 21 C. Cls. R., 451). Is there any difference in principle between the ease ■of a disbursing officer who paid out money on the faith of the Treasury Department’s rulings and of a carrier who carried the mails on the faith of the Postmaster-General’s construction of a statute? Ordinarily the construction given to a statute by a Department is favorable to the Government; that is to say, favorable to itself and unfavorable to the other party, who is ■seeking to draw upon its limited appropriations. liet, where there is a foundation of ambiguity to stand upon the courts have not hesitated to say that the contemporaneous construction by executive officers called upon t > interpret a statute, and ■appointed to carry it into effect, is entitled to great respect, and ought not to be overruled without cogent reasons, although a different construction might be given to the statute if the question were altogether new. (Brown v. The United States, 113 U. S. R., 568.)
Upon the authority of that case the court is of the opinion that the doubtful terms of the statute should be resolved in favor of the claimant.
The judgment of the court is that the claimant recover the sum of $4,343.61, and that the counter-claim of the defendant be dismissed.