Richardson, Oh. J.,
delivered the opinion of the court.
The questions of law arising upon the findings of fact in this case involve the right of set;off' and counter-claim by the defendants for money erroneously paid out by public officers in settlements of accounts, and also the conclusiveness of the balances stated by the accounting officer of the Treasury.
Mail route No. 16011 extends from Waldo to Wildwood in Florida, over a railroad aided by grant of lands under the act of May 17, 1856, ch. 31 (11 Stat. L., 15), subject to the provision that the United States mail shall be transported over said road at such prices as Congress may by law direct.
Congress subsequently in 1876 passed an act, one section of which is as follows:
“That railroad companies whose railroad was constructed in whole or in part by a land grant made by Congress on the condition that the mails should be transported over their road at such price as Congress should by law direct, shall receive only eighty per centum of the compensation authorized by this act!” (1876, July 12, ch. 179, § 13, Supplement to Rev. Stat., p. 226.)
The road was operated and the mails were carried over that route from May 16,1881, to February 29, 1884, by the Florida *56 Transit and Peninsular Railroad Company, and from the latter date to the time of bringing this action by the Florida Railway and Navigation Company, of which the claimant is Receiver.
The Post-Office Department, apparently by oversight, treated the road as a non-land-grant railroad and paid for carrying the mails over it the full maximum authorized by law to such roads up to the end of the second quarter of the year 1885, without making the deduction of 20 per cent, required by the act of 1876.
On the 25th of July, 1885, the Postmaster-General addressed an official communication to the Secretary of the Interior, making inquiry as to whether the road was a land-grant road. Upon receiving a reply that it was a road aided by Congress with a land grant under the Act of 1856 (11 Stat. L., 15), the Postmaster-General, on the 14th of August, directed the Auditor for the Post-Office Department to modify the former orders from the beginning so as to allow only 80 per cent, of the maximum compensation authorized to be paid railroad companies generally, thus for the first time treating the road as one of the land-grant roads affected by the statute of 1876.
Since then the claimant’s corporation has been allowed the compensation due for carrying mails on such land-grant roads, without controversy.
The Auditor re-opened and re-examined all previous quarterly accounts and settlements and found that by not regarding the Act of 1876 as to land-grant roads there had been overpaid for carrying the mails over this road the sum of $3,383.60. In stating the quarterly account of the claimant company for carrying the mails over the road, September 30, 1885, after makiug the proper allowance for compensation, he deducted $1,128.68 of said sum thus overpaid, and in stating the quarterly account of the claimant company for carrying the mails over another route he deducted the balance of said sum overpaid, $2,255.58. It is for compensation tor services withheld by the defendants on account of these deductions that this action is brought. The defendants plead set-off and counterclaim for the amount of those overpayments, and that is the only issue in the case.
The claimant insists that the overpayments having been made in settlement of balances stated and certified by an accounting officer (the Sixth Auditor) are binding and conclu- *57 give on the defendants and can not be recovered back either by action or counter-claim, relying upon the following section ■of the Revised Statutes:
“ Sec. 191. The balances which may from time to time be stated by the Auditor and certified to the heads of Departments by tlie Commissioner of Customs or the Comptrollers of the Treasury, upon the settlement of public accounts, shall not be subject to be changed or modified by the heads of Departments, but shall be conclusive upon the executive branch of the Government, and be subject to revision only by Congress or the proper courts. . The head of the proper Department, before signing a warrant for any balance certified to him by a Comptroller, may, however, submit to such Comptroller any facts in his judgment affecting the correctness of such balance, but the decision of the Comptroller thereon shall be final and conclusive, as hereinbefore provided.”
This section is a reproduction of the Act of March 30,1868, ch. 256, § 1 (15 Stat. L., 54). Before the passage of that act the heads of Departments and even the President, as superior officers, claimed the right to direct the accounting officers in the matter of accounting and to change balances found by them when acting on their own judgment, before warrants were •drawn for payment, and this claim of right was frequently resisted by the accounting officers. The question involved was repeatedly reviewed in Opinions of the Attorneys-General (1 Opin., 624; 2 Opin., 508, 544; 5 Opin., 630), and was never finally settled until the enactment of the provision of section 191 of the Revised Statutes. (See a review of the subject in McKee’s Case, 12 C. Cls. R., 555.)
Since then, for the purpose of drawing warrants and making payments, the balances stated by the accounting officers are final and conclusive upon the executive branch of the Government. But by the very terms of the act they are not conclusive upon Congress or the proper courts. The former may deal with them in its legislative capacity as it deems best, and the latter are not bound by them when judicially deciding upon the controversies involved in the transaction to which they relate.
■ Whether or not, upon the direction of the Postmaster-General, changing his previous orders, long since executed, the Sixth Auditor was justified, as a matter of accounting, in opening accounts settled and paid, and in charging to the claimant’s *58 corporation overpayments made upon such prior adjustments, instead of leaving the United States to their remedy by action against the company, is not the question here to be determined.
The defendants have pleaded the same overpayments in set-off and counter-claim to the claimant’s demand, and whether or not they are entitled to judgments depends upon the principles of law applicable to the question of recovery back of public money paid by public officers in mistake of fact or law, and not merely upon the action of the Sixth Auditor. (Longwill's Case, 17 C. Cls. R., 288; Mississippi Central Railroad Case, 23 C. Cls. R., 27, and cases cited.)
On the 29th of February, 1884, the claimant’s corporation became the owner and operator of a land-grant railroad under the Act of 1856. It was thereby charged with the obligation running with the road to carry the mails at 80 per cent, of the amount authorized to be paid to other railroads for such service. This obligation created a privity of contract and agreement between the parties, the United States on the one side and the operating company on the other. The Postmaster-General was bound to pay that reduced allowance, and was prohibited bylaw from paying any more. Whatever was paid beyond that sum was unauthorized and illegal.
That the payments were made in mistake of fact, by oversight or neglect of some officers of the Post-Office Department, and not upon an error of law, sufficiently appears from the finding. As soon as the Postmaster-General learned by inquiry from the Secretary of the Interior that the road had been aided by grants of land under the act of 1856, a fact which must have been known to the claimant corporation, and which, not being apparent in the statutes, seems very naturally to have escaped the knowledge of the Postmaster-General, he modified his previous orders.
This presents a clear case of right to recover back the over-payments made to the claimant’s corporation in mistake of fact and in violation of law by a public officer, according to the numerous decisions on that subject. The contract relations between the parties still continue and have continued consecutively since the first overpayment. It is true that accounts have been stated by the accounting officer and payments made quarterly, but according to the methods of business of the Department such payments are made by drafts of the Postmaster- *59 General (McKnight’s Case, 13 C. Cls. R., 303), but no receipts in full are given and no settlements are agreed upon as final, as in cases where parties come together and settle and discharge disputed claims on one side and the other. (Shipman’s Case, 18 C. Cls. R., 147, and cases there cited.)
For the purpose of rectifying mistakes we are of opinion that the items of the several statements upon which the Sixth Auditor certifies balances due for carrying the mails ordinarily* and in the absence of special circumstances, may be regarded as running accounts, at least while the parties continue the same dealings between themselves; and that money paid in violation of law upon balances certified by the accounting officers generally may be recovered back by counter-claim or otherwise where no peculiar circumstances appear to make such recovery inequitable and unjust. (Steele’s Case, 113 U. S. R., 128, and 19 C. Cls. R., 181; Burchard’s Case, 125 U. S. R., 176; McElrath’s Case, 102 U. S. R., 426, and 12 C. Cls. R., 312; Barnes v. District of Columbia, 22 C. Cls. R., 366, and cases there cited; Roche v. District of Columbia, 18 C. Cls. R., 217.
From these views it follows that the overpayments made to the claimant’s corporation, the amount of which is held by defendants in set-off to money earned for carrying the mails in the same continuous service, may be legally applied as a counter-claim and set-off in this action for money thus earned by the claimant’s corporation.
As to the overpayments made to the Florida Transit and Peninsular Railway Company before the claimant corporation became the owner of the road and before it had any contract relations with the defendants, a different case is presented.
Five railroad companies, on the 29th of February, 1884, by separate votes merged the stock, franchises, and all their property into the Florida Transit and Peninsular Railroad Company, and consolidated so as to form one company, to be called the “Florida Railway and navigation Company,” a corporation under the laws of Florida, which is the claimant’s corporation.
In the absence of the charter or reference to any law defining the power, rights, and obligations of the latter corporation we must assume that it acquired, by purchase, the stock, franchises, and property of the five companies named, including the Florida Transit and Peninsular Railroad Company, and *60 that it made settlements with each of the companies and paid for the property acquired upon terms based upon the values at that time. It does not appear that the claimant’s corporation agreed to assume and pay the debts of the Florida Transit and Peninsular Railroad Company. It may be presumed that each of the consolidated companies was paid for its assets in full, and that each was to liquidate its own debts and settle with-its own separate stockholders.
Wh en these overpayments were made there was no privity of contract between the present claimant’s corporation and the defendants. In making the purchase and completing the settlements among the several corporations, the' purchasing corporation and those comjianies which united with the claim•ant’s corporation in turning over their assets to the new corporation bad a right to rely upon the settlements previously made between the Postmaster-General and one of the companies, no overpayments having at that time been claimed by the Postmaster-General and none of the jiarties having any reason to suppose the settlements were not correct and final.
Although as a general principle it is sometimes said that es-toppels do not run against the Government, there are many exceptions, and we think this is one of them. (Harton's Case, 21 C. Cls. R., 451; Branson v. Wirth, 17 Wallace, 43; Roberts’s Case, 10 Fed. Rep., 541; Bigelow on Estoppels, 2d ed., p. 246.)
In business matters the Government, acting only by public •officers, its agents, is bound by the admissions and representations of such officers in relation to transactions within the line of their duty under the principles of the law of agency as applied to individuals. In the numerous actions against the United States tried in this court we constantly hold the Government concluded or estopped by such acts of its officers as form part of the res gestee. It was said by Chief-Justice Waite, speaking for the Supreme Court, in Cooke v. United States (91 U. S. R., 398): “ Generally in respect to all the commercial business of the Government if an officer specially charged with the performance of any duty and authorized to represent the Government in that behalf neglects that duty and loss ensues, the Government must bear the consequences of his neglect.”
In our opinion the overpayment made to the Florida Transit ■and Peninsular Railway Company before the claimant’s cor *61 poration operated the land-grant road and when there existed no contract relations between the latter and the defendants can not be set off against the money since earned by the claimant’s corporation, and to that extent the counter-claim should be dismissed. The claimant is therefore entitled to judgment for that amount withheld, $1,914.91.