Nott, J.,
delivered the opinion of the court:
This case presents one of those delicate questions of Army administration which the judiciary is always reluctant to determine.
The claimant, a captain in the Twenty-third United States Infantry, has been in command of the battalion of that regiment from the 1st May, 1892, to the present time. The Infantry Drill Regulations of the Army, 249, 255, contemplate and direct that the field and staff officers be mounted. Captain Eskridge accordingly provided himself with a major’s outfit of two horses and furnished forage for the same. For the period extending from the 1st May, 1892, to the 31st August, 1892, his pay accounts were certified in the manner hereinafter indicated, and he received the pay of a mounted officer of his rank but not commutation of forage for his horses. Since the last date he has furnished the horses and performed the service of a mounted officer, but has not been paid.
The Army Regulations, 1889, provide:
“The following officers, in addition to those whose pay is fixed by law, are entitled to pay as mounted officers: Officers of the staff corps * * * and officers on duty which, in the opinion of the department commander, requires them to be mounted, and is so certified by the latter.”
There is also prefaced to these Army Regulations the following order:
“War DEPARTMENT, February 9,1889.
“The President of the United States directs that the following Regulations for the Army be published for the govern *298 ment of all concerned, and that they be strictly observed. Nothing contrary to the tenor of these regulations will be enjoined in any part of the forces of the United States by any ■commander whatsoever.
“Wk. C. Endicott,
“ Secretary of War.”
It therefore seems clear that the regulation above quoted constitutes the law of the case, and that no authority short of the President can change it. The regulations vest the discretion of determining what is the duty which requires an officer to be mounted wholly and exclusively in his department commander; the order of the President forbids that anything contrary to the regulations “be enjoined in any part of the forces of the United States by any commander whatsoever,” and the President has not interfered to suspend the force of the regulation or to overrule the decision of the department commander. .The judiciary can not try the question whether' the duty to which the officer was assigned required him to be mounted; and his furnishing horses and rendering mounted service gives him no right which can be enforced by law.
But in September, 1892, the general commanding the Department of Texas, in whose command the claimant was and who had theretofore certified that the claimant’s duty as commander of a battalion required him to be mounted, addressed a communication to the Major-G-eneral Commanding the Army of the United States, General Schofield, stating that he had so far given certificates and that it did not seem to him “fair to ask an infantry officer to do mounted duty as required by the recently adopted tactics, and compel him to furnish his own mount,” and asking his instructions upon the questions, “Shall infantry captains, when acting as majors, receive the pay of a mounted officer of the grade of captain?” and “Are they entitled to forage when furnishing their own mounts ? ”
The Major-General Commanding had previously decided in a similar case coming from another military department “ That at the present time it is not practicable to furnish horses as requested, and when all the officers can not be mounted, the ceremonies will be performed dismounted.”
This answer was returned to General Wheaton, and thereafter he refused to certify the claimant’s pay accounts. This, so far as paymasters of the Army were concerned, stopped Captain Eskridge’s pay as a mounted officer.
*299 But General Wbeaton, at the time when he declined to certify the pay account, gave to Captain Eskridge the following certificate :
“I hereby certify that Captain R. I.Eskridge, 23d Infantry, was, from September 1,1893, to October 31, 1893, on duty, which, in my opinion, required him to be mounted.
“His pay accounts for that period were not so certified by me by reason of the views of the Major-General Commanding the Army, expressed in communication dated September 15,1892, that the duty (that of battalion commander under par. 255, Infantry Drill Regulations, U. S. Army) ‘ is not of a character to warrant the department commander’s certificate under A. R. 1443.’”
Declining to certify the pay' accounts was manifestly a proper compliance on General Wheaton’s part with the views expressed by the commanding general. Giving the above certificate was manifestly a proper and just act on the part of General Wheaton to place Captain Eskridge right on the record iind secure to him whatever legal right in the premises he might have.
It may be said that the certificate establishes the fact that in the opinion of the department commander the duty which Captain Eskridge performed was one which required him to be mounted, and therefore that Captain Eskridge was justified in continuing to render mounted service and is entitled to recover the pay which the law affixes to such service. The court, however, can not look into the'mind and motives of the department commander, but must be governed by his official acts. General Wheaton, doubtless, like many another man, was convinced against his will, but he nevertheless, so far as the record discloses, adopted his superior officer’s opinion as his own official opinion and acted accordingly. The action of the court must be regulated by General Wheaton’s official opinion and by his acts.
But it seems to the court equally clear that this change of official action should not operate retroactively upon the legal rights of the claimant. Captain Eskridge ha<l been assigned to this duty; the department commander had certified that it was a duty which required him to be mounted; he had j>ro-cured horses and furnished forage on the faith of that decision ; from the first of May to the last of August he had been paid as a mounted officer; from the first of September to the last of *300 October lie continued to furnish horses and forage and per ■ form the same duty amid the same circumstances. Such were the facts when he went at the close of the bimonthly period for which the Army is paid, October 31,1892, to procure a certificate on his pay account similar to the certificates previously given to him. The facts constitute an estoppel, concerning services rendered up to that date, under the decision in Duval’s Case (25 C. Cls. R., 46), and the certificate which General Wheaton then gave, though not attached to a pay account and probably not sufficient to authorize a paymaster io pay Oaptain Eskridge as a mounted officer for the bimonthly period of September and October, nevertheless establishes the essential facts required by the Army Regulations, viz, that Oaptain Eskridge kept two horses in the service of the United States and furnished forage, and that the duty which he rendered was, in the opinion of his department commander, one which required him to be mounted.
The conclusion of the court, therefore, is that subsequent to the 31st October, 1892, Oaptain Eskridge furnished horses and forage at his own risk and cost, and for them he can not recover.
The judgment of the court is that for the months of September and October, 1892, he recover for his pay as a mounted officer, $46.66$ and for the months of May, June, July, August, September, and October, 1892, for his forage for two horses, $96, amounting in the aggregate to $142.66.