NATIONAL CONTRACTING CO. v. SEWERAGE & WATER BOARD OF
NEW ORLEANS et al.

(Circuit Court of Appeals, Fifth Circuit.    October 2, 1905.)

No. 1,393.

CONTRACTS—BREACH—FORM OF ACTION.

Where a contract for the construction of a public work for a city required the contractor to use a certain kind and quality of cement in the masonry and concrete work, but no particular quantity was specified, nor the price to be paid therefor, the contract having been let on a bid· for the completed work, the fact that the contractor used an inferior and cheaper cement does not give the city, after paying for the work without knowledge of the substitution, a right of action ex quasi contractu or in repetition, under Rev. Civ. Code La. art. 2293 et seq., to recover the difference in the cost of the two kinds of cement or the profit made by the contractor by the substitution as money paid which was not due; but the remedy is by action on the contract, as provided for in Rev. Civ. Code La. arts. 1930, 2769, and the measure of recovery is the amount of damages sustained by the city by reason of its breach.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

This action was begun in the civil district court for the parish of Orleans, by the Drainage Commission of New Orleans against the National Contracting Company of New York and the Fidelity & Deposit Company of Maryland, and was removed by the defendants into the United States Circuit Court for the Eastern District of Louisiana.

The averments of the petition may be summarized as follows: That the council of the city of New Orleans in 1896 approved certain plans and specifications for the drainage of the city, which were prepared by the city engineer and approved by an advisory board, and were drawn and prepared in pursuance of Ordinance No. 10,091, C. S., approved July 12, 1893. That for the purpose of carrying out the plans in question the Legislature, by Act No. 114 of 1896 (Acts 1896, p. 162), organized the plaintiff board. That the board, acting under said statute, advertised for bids for certain work known as contracts A and C, to be let under the general specifications aforesaid and certain special specifications prepared by its chief engineer. That on August 9, 1897, the National Contracting Company, as the lowest bidder, was adjudicated said contracts, and both contracts were merged into one notarial contract. Both the notarial contract and the general and special specifications for contracts A and C are annexed to and made part of the petition. That the terms and conditions of the adjudication of said contract could not be varied or altered subsequently, without impairing the just claims of the parties to it, and the guaranties and equal opportunities on the faith of which other bidders participated. That the powers of the Drainage Commission are limited to those bestowed upon it in the acts of the Legislature, and that the chief engineer and his assistants are only employés of the commission, and as such confined within their several lines of duty, and that any contrary acts done by the commission or its employés are ultra vires and void. That the substitution hereinafter recited of Pozzolan cement for imported Portland cement impairs the system of drainage projected for New Orleans. That, some time after the acceptance of the bid of the National Contracting Company, the chief engineer of the commission drew up supplemental specifications, changing and altering the original specifications proposed by the commission·for bidders. That the general specifications of said contract provided that the cement used, whether American or imported, must be of certain prescribed strength and fineness, and that imported Portland cement must be used in certain named portions of the work, and· wherever· else the engineer might designate, and that the mortar used in laying brickwork and concrete was to be compounded as directed, both where Amer-

ican natural cement was used, and where imported Portland cement was used. That the plaintiff has paid for imported Portland cement, whereas the cement furnished by the National Contracting Company was a far cheaper product, and in point of fact not at all a Portland cement. That the contract of August 9th required of the contractor the use of the "best quality of imported Portland hydraulic cement," and under clause 12 of the contract this was a guaranty by the contractor. That the contracting company, being bound by said contract and guaranty to furnish imported Portland cement of the first grade, and having substituted slag, or Pozzolan, cement, improperly called steel Portland cement, the domestic manufacture of the Illinois Steel Company of Chicago, a less valuable product, and having been paid for said Pozzolan as if it had been imported Portland cement, cannot withhold the difference in price unlawfully received by them. That all bidders on the contracts for drainage work, including the adjudicatee, the contracting company, were advised to base and did base their bids on imported Portland cement, but that after the adjudication the engineer, in violation of the terms and conditions of the bids, and the essence of the sale by sealed proposals to the contracting company as the lowest bidders, allowed the contractor to use steel, improperly called Portland cement, an American product of much lower price, wherever the bid had been for imported Portland cement. That the chief engineer was never authorized to make this substitution, and that he never referred or reported the same to the commission, and that the commission remained uninformed on the subject until the Picayune newspaper in February, 1902, made charges that the contracting company had used the cheaper American steel Portland instead of the dearer imported Portland, but had actually been paid at the higher price bid by them originally for imported Portland cement, and that on investigation the engineer admitted the facts fully. That the price at which the American product, known at that time as steel Portland cement, was bought and used by the National Contracting Company, gave them much larger profits than could have been had if they had used the far more valuable product of imported Portland, required by the original specifications. That not less than 75,000 barrels of such substituted cement was used. That by the alterations on the original specifications on which the adjudications were based, the contractor was overpaid in error, and the commission was "deprived of all benefit that might have resulted from the substitution of a cheaper product in the work of drainage for a dearer one." That the National Contracting Company wrongfully procured for itself the issue by the chief engineer of certificates of work laid in American steel cement, just as if the work had been laid in imported Portland, and proceeded to collect on the certificates the same amount which would have been payable upon them if the work had been done acording to contract and in imported Portland; and that the engineer by his said action contributed knowingly to this result. That consequently the National Contracting Company has been overpaid: that said payment was without cause, or the National Contracting Company has received it without giving any consideration; and that the amount so overpaid amounted to at least $60,000, which is recoverable by the action of repetition. That petitioner has the right to have restoration made of said sum, or of as much more as petitioner may make proof of on the trial; that said company is forbidden by law to despoil the public funds and cannot enrich itself at the public expense; and that by the act of receiving the money it became obligated by a quasi contract to return it with interest and costs. The petition then averred that the National Contracting. Company had given the Fidelity & Deposit Company of Maryland as surety for the faithful performance of its contract in the sum of $35,000, and prayed for judgment against the principal for $60,000 and the surety for $35,000.

A few days after this petition was filed a supplemental petition was filed with leave of the court. This petition avers: "That the National Contracting Company, under their contract with petitioner of August 9, 1897, which contract is made part of the original petition herein and of this petition likewise, bound and obligated themselves to use for certain work on the drainage system of New Orleans the best quality of imported hydraulic Portland cement, as in the original petition herein and the document thereunto an·.

nexed is set forth at length; and that the Fidelity & Deposit Company of Maryland, as surety, bound themselves to petitioner, with said National Contracting Company, in solido, without benefit of discussion or division, for the faithful performance by said National Contracting Company of their said contractual obligations; and petitioner represents that, notwithstanding said National Contracting Company were under their contract bound to use on the work of the drainage system of New Orleans, as recited in the original petition, the best quality of imported hydraulic Portland cement, the said National Contracting Company, unlawfully and without the authority or knowledge of petitioner, substituted for said imported cement not less than seventy-five thousand (75,000) barrels of a different cement of less value, viz.: Pozzulana or Pozzolan cement, a domestic product made by the Illinois Steel Company of Chicago, and not at all a Portland cement, as has hereinbefore been set forth in the original petition. And petitioner represents that for this breach of contract the said National Contracting Company and the said Fidelity & Deposit Company of Maryland are liable in solido unto petitioner, for the difference between the price of the best quality of imported hydraulic Portland cement and said Pozzolan cement, being the sum of sixty thousand dollars ($60,000), with interest according to law. And petitioner further represents that said National Contracting Company furnished bond August 9, 1897, with the said Fidelity & Deposit Company of Maryland, as surety, in the sum of two hundred and thirty-five thousand dollars ($235,000) in favor of petitioner, for the faithful compliance by said National Contracting Company with their contractual obligations under the contract hereinbefore referred to and also referred to in, and made part of, the original petition herein; but that the said National Contracting Company has violated the obligations arising from said bond, by failing to do and perform the several matters and things contained and stipulated in said contract hereinbefore referred to and the documents thereto annexed, and especially in this, that the said National Contracting Company unlawfully and without authority or knowledge of petitioner substituted for the imported hydraulic Portland cement of the best quality not less than seventy-five thousand (75,000) barrels of said Pozzolan cement, as has heretofore been stated in this supplemental petition and as has been more full [fully] set forth in the original petition herein. And petitioner represents that, for the breach of condition of said bond, the said National Contracting Company and the said Fidelity & Deposit Company of Maryland are liable in solido unto petitioner in the said sum of not less than sixty thousand dollars ($60,000), being the difference between the price of the best quality of imported hydraulic Portland cement and said Pozzolan cement, loss and damage to petitioner. And petitioner annexes said bond and makes it part of this supplemental petition. And petitioner represents that it desires to correct a clerical error in the original petition herein; that petitioner in said original petition describes the bond of the Fidelity & Deposit Company of Maryland as being a bond of thirty-five thousand dollars ($35,000), whereas the bond is one for two hundred and thirty-five thousand dollars ($235,000). The said misdescription is in law corrected by annexing the bond itself, but that petitioner has prayed for judgment against said Fidelity & Deposit Company of Maryland for thirty-five thousand dollars ($35,000), while petitioner is entitled to have said misdescription corrected in fact wherever it occurs, and to have the prayer amended to correspond with the correction, and to pray for the recovery of sixty thousand dolars ($60,000). Wherefore, not waiving, but, on the contrary, insisting upon, the allegations of its original petition, petitioner prays for leave to file this supplemental petition and to amend said original petition accordingly, through their local manager and agent, William Mayo Venable, and the said Fidelity & Deposit Company of Maryland, through their local director and agent, P. M. Miller, be cited to answer hereto; that the misdescription of the bond as contained in the text of the original petition be changed so as to read two hundred and thirty-five thousand dollars ($235,000) instead of thirty-five thousand dollars ($35,000); and the prayer in the said petition be otherwise maintained, and that petitioner have and recover judgment of the said National Contracting Company and of the said Fidelity & Deposit Company of Maryland in solido, in the sum of sixty

thousand dollars ($60,000) with interest from —————— according to law, and costs, and for such further relief as equity, law, and the nature of the case may require."

The exhibits attached to the petition show that the National Contracting Company agreed with the drainage commission of the city of New Orleans to build certain foundations composed of brick, mortar, concrete, steel, and stone, and certain canals and sewers of brick, mortar, concrete, and steel, furnishing all materials, apparatus, machinery, and labor required for the same. The contracting company was to be paid per cubic yard for brick work, and per cubic yard for concrete; the prices to vary according to the proportions of sand specified to be used in the mortar or in the concrete, and as imported Portland cement or American natural cement was specified to be used in making the mortar or concrete. There is no provision in the contract fixing the number of barrels of cement to be used in each cubic yard of concrete or in each cubic yard of brickwork, nor is there established in the contract any standard by which any estimate can be made of the number of barrels of imported Portland cement or American natural cement required to be used by the contractor in laying the brickwork or concrete.

When the cause reached the United States Circuit Court, by removal proceedings taken by both defendants jointly, they both filed a plea of no legal cause of action. This plea, under the Louisiana practice, was equivalent to a demurrer. These pleas were overruled, and the defendants answered. Thereafter, by consent of the National Contracting Company, by proper order in the premises, the Sewerage and Water Board of the city of New Orleans was substituted as the plaintiff in lieu of the Drainage Commission of New Orleans. On trial in the court below a judgment was given in favor of the Sewerage and Water Board against the National Contracting Company in the sum of $28,390, with interest from judicial demand. Thereupon this writ of error was sued out, and the case brought to this court for review.

E. H. Farrar, B. F. Jonas, and E. B. Kruttschnitt, for plaintiff in error.

P. M. Milner and Omer Villere, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. (after stating the facts). The basis of this action is a contract to construct certain foundations, covered canals, and sewers, of brick, mortar, concrete, steel, and stone; the contractor to furnish the materials and perform the work, and to be paid therefor certain prices (not given in the pleadings) per cubic yard of brickwork or concrete, varying with the cement used, and all in accordance with certain specifications. According to the specifications, certain portions of the brickwork and of the concrete were to be laid in imported Portland cement. Though the fact is not averred, the inference to be drawn from the petition is that the contract has been fully executed and the contractor settled with and paid. The substance of the plaintiff's claim is that in executing the contract in lieu of using imported Portland cement, as required in the specifications, the contractor, with the authorization of the plaintiff's engineer, used a slag or Pozzolan cement for which it had paid less money than it would have had to pay for the imported Portland cement if the latter had been used. The pleadings fail entirely to aver any damages sustained by the plaintiff beyond the suggestion that the substitution complained of impairs the drainage system of the city of New Orleans.

In the lower court it was ruled, and the ruling is concurred in and asserted here by counsel for the defendant in error, that the petition

and supplemental petition do not state sufficient facts to constitute an action for damages under the contract, but do state facts sufficient to constitute an action ex quasi contractu, or in repetition, under the following articles of the Civil Code of Louisiana, to wit:

"Art. 2293. Quasi contracts are the lawful and purely voluntary act of a man from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties.

"Art. 2294. All acts from which there results an obligation without any agreement in the manner expressed in the preceding article from quasi contracts. But there are two principal kinds which give rise to them, to wit: The transaction of another's business, and the payment of a thing not due."

"Art. 2301. He who receives what is not due to him, whether he receives it through error, or knowingly, obliges himself to restore it to him from whom he has unduly received it.

"Art. 2302. He who has paid through mistake believing himself a debtor, may reclaim what he has paid.

"Art. 2303. To require this right it is necessary that the thing paid be not due in any manner, either civilly or naturally. A natural obligation to pay will be sufficient to prevent recovery.

"Art. 2304. A thing not due is that which is paid in the supposition of an obligation which did not exist, or from which a person has been released. ·

"Art. 2305. That which has been paid in virtue of a void title is also considered as not due.

"Art. 2306. The payment from which we might have been relieved by an exception that would extinguish the debt, affords grounds for claiming restitution.

"Art. 2307. But this'exception must be such that it shall extinguish even all natural obligations. Thus, he who having the power to plead prescription shall have made payment cannot claim restitution."

The same principle is stated in the Code of Practice (article 18), which says:

"He who pays through error what he does not owe, has an action for the repetition of what he has paid, unless there was a natural obligation to make such payment; but he must prove that he paid through error, otherwise it shall be presumed that he intended to give."

The principles thus declared are all found in the common law and are based on the maxim that no one shall enrich himself at the expense of another. See Addison on Contracts, vol. 2, pp. 1039, 1040.

The whole case as presented by the petition and supplemental petition arises out of a violation of contract without which violation there would be no vestige of a right of action. And this, taken in connection with the facts that the defendant in error bought and paid for no cement as such, had no contract that any specific quantity of imported Portland cement should be used in the works contracted for, or that the cement should be furnished or paid for at any certain price, shows that the defendant in error cannot maintain on the facts stated an action in repetition to recover the difference between what the contractor would have had to pay for the cement contracted to be used and what he paid for the cement actually used, nor for the profits the contractor may have made by the alleged substitution. What the defendant in error paid to the contractor was paid under the contract, and for so many cubic yards of brickwork, and so many cubic yards of concrete; and, if too much was paid because the work was not in accordance with the contract, it can only be recovered in an action for damages on

allegations of fact suitable to such action, for the Louisiana Civil Code expressly provides for the action.

The contract, classified under the Louisiana Civil Code, was one of "letting and hiring" in which the National Contracting Company was the undertaker. In regard to such contracts, article 2756, Rev. Civ. Code La., provides:

"To build by a plat or to work by the job is to undertake a building or a work for a certain stipulated price."

And the next article provides:

"A person who undertakes to make a work, may agree either to furnish his work and industry alone or to furnish also the materials necessary for such a work."

And article 2769 provides:

"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with his contract."

Article 1930, Rev. Civ. Code La., dealing with the question of damages resulting from the inexecution of obligations, provides:

"The obligations of contracts extending to whatever is incident to such contracts, the party who violates them is liable, as one of the incidents of his obligations to the payment of the damages which the other party has sustained by his default."

These articles are practically written in and form part of the contract between the parties, and to do justice between them, if the contract has been violated, it is neither proper nor necessary to ignore the plain provisions of the Code applicable to the case, and resort to an action in repetition based on an implied contract to refund money said to have been paid in error, because the brand of cement specified in the contract was not used as an ingredient in the brickwork and concrete actually paid for.

The question of pleading is not a mere matter of form; substantial rights are involved. If the action for repetition can be maintained, it may be, as claimed by counsel and ruled on the trial, that the only question for the court and jury was the difference in prices between the cement specified in the contract and the cement substituted, or the amount of profits the contractor made by the substitution; in which case the action could only be defeated by showing that the contractor paid as much for the substituted cement as for the cement specified in the contract. Such a rule of damages could only be justified on the assumption contrary to the fact that there was a contract express or implied that a cement of specified price was to be furnished regardless of quality. The contract between the parties provided as to the strength and quality of the cement to be used in the brickwork and concrete, but there was no provision as to the price of cement, and it seems to us immaterial what the contractor paid for the cement actually used, or would have had to pay for the cement specified in the contract. If the action is one for damages under articles 1930 and 2760 of the Code, supra, the defendant can show how and why and by what authority and to what effect the substitution of cement was made, and the rule of dam-

ages will be what the plaintiff has actually lost or been damaged, and not what profits or losses the contractor may have made.

We have given careful attention to the cases and authorities cited and illustrated in the opinion of the learned trial judge, and in the brief of the counsel for the defendant in error, but we find nothing in any of them really conflicting with the views herein expressed. A review is not necessary, and we notice only those adjudged cases, apparently all well decided, from which counsel have quoted general remarks and dicta indulged in by the judges announcing the opinions of the respective courts, which remarks and dicta are cited to show that, whenever a person has paid more than he owed, he may always recover it back by an action ex quasi contractu.

United States v. Barlow, 132 U. S. 271, 10 Sup. Ct. 77, 33 L. Ed. 346, was an action brought by the government, under sections 3960, 3961, and 4057 of the Revised Statutes [U. S. Comp. St. 1901, pp. 2702, 2756], to recover from the defendants' subcontractors, for carrying the mail, moneys paid them under a mistake of fact caused by their false representations as to the services. Appleton Bank v. McGilvray, 4 Gray, 522, 64 Am. Dec. 92, was an action for money had and received to recover money paid by mistake. Marsh, Respondent, v. Richards. Appellant, 29 Mo. 99, was an action on a special contract to recover compensation alleged to be due on its performance. The defense was that the contract had not been executed in the manner and with the materials required by the contract. Johnson County v. Lowe et al., 72 Mo. 637, was an action upon a bond to recover damages, because a certain bridge was not built according to contract, and therein it was held that the fact that the bridge had been accepted was not "a waiver by the county of any defects in the bridge of which its agents were ignorant at the time of such acceptance and payment." Barnes et al. v. District of Columbia, 22 Ct. Cl. 366, from which counsel quoted liberally, seems to have been a suit brought to recover a balance alleged to be due upon contracts for public works in the District of Columbia, in which the defense was made that the works had not been constructed according to contract. We quote as follows:

"The question here involved, however, is not necessarily whether or not the defendant, in an independent suit against the claimant, could recover back the amount of overpayments credited or paid. The claimant has of his own motion brought these contracts and extensions before the court and has invited the issues which the defendant tenders. If he seeks a settlement of parts of his several contracts, he cannot complain if the defendant asks to have the whole accounts under the same revised and restated. The subject in that view has heretofore been considered by this court and the Supreme Court, and the law so declared. McElrath's Case, 102 U. S. 441, 26 L. Ed. 186, affirming the judgment of this court, 12 Ct. Cl. 312; Brown's Case, 17 Ct. Cl. 421; McKee's Case, 12 Ct. Cl. 560."

Calkins v. Griswold, 11 Hun (N. Y.) 208, was an action to recover overpayment for a lot of grapes, in which there was a mutual mistake of fact as to the weight of the grapes delivered, and it was held that the plaintiff was entitled to recover back the money paid in consequence thereof. Wheaton v. Lund, 61 Minn. 94, 63 N. W. 251, was an action to recover balance due on a contract, in which the defense was that the contract had not been complied with. Duval, Receiver, v.

United States, 25 Ct. Cl. 46, was an action against the government for carrying the mail, in which overpayments under a mistake of fact were set up as counterclaims and allowed by the court. Blaudot v. Lemaire Liege, 27 Avril, 1876, Pasicrisie Belge 1876, seems to have been a plain case for the recovery of amount of overpayment for work and material. In our opinion, no one of these cases, nor any case cited, is authority for the present action.

The first assignment of error is as follows:

"That the court erred in overruling the defendant's plea of no cause of action in this cause."

As we are satisfied that the plaintiff below does not allege facts sufficient to entitle him to recover ex contractu or ex quasi contractu, we think this assignment of error is well taken, and necessitates the reversal of the case. The other assignments of error need not be considered.

The judgment of the Circuit Court is reversed, and this cause is remanded with instructions to sustain the exceptions of no cause of action, and otherwise proceed according to good practice and the views herein expressed.